OPINION OF THE COURT
Simons, J.
Defendant has been adjudicated a youthful offender upon a jury verdict finding him guilty of criminally negligent homicide. He appeals to this court from an order of the Appellate Division affirming the judgment, contending that the procedure employed by the trial court in trying him and a codefendant together before separate juries was unauthorized and unconstitutional. He identifies no specific prejudice to his case but asserts that the dual jury procedure is inherently prejudicial and should not be allowed. He also contends the evidence was insufficient to establish his guilt.
The charges arise from an automobile accident occurring at the intersection of Hempstead Turnpike and Silver Lane in Levittown, New York, on the evening of January 31, 1983. *231 January 31 was a clear and dry evening and at the scene of the accident, Hempstead Turnpike, a six-lane divided highway, is level, straight and illuminated. A vehicle operated by Mildred Carmen, which had been proceeding west on Hemp-stead Turnpike, entered the intersection with a green light and turned left into Silver Lane. As it did so it was struck by two vehicles traveling east, one operated by defendant and the other by his codefendant Ahrens.
Eyewitnesses testified that the Ahrens vehicle struck the right front of the Carmen vehicle, then separated and skidded to the south curb where it flipped over. Defendant’s vehicle struck the right rear of the Carmen vehicle at approximately the same time and pushed it easterly down Hempstead Turnpike until the two came to a stop in the road about 100 feet from the intersection. Mrs. Carmen died instantly and codefendant Ahrens was seriously injured. Defendant and his passenger sustained only minor cuts and bruises.
Defendants were charged with second degree manslaughter and criminally negligent homicide on alternative counts of individual and accomplice liability. It was the prosecutor’s theory that the two defendants were racing before the accident and to support this he submitted evidence establishing that the cars had stopped abreast on Hempstead Turnpike at a red light located .4 miles west of the scene of the accident, that when the light changed, they left the intersection abruptly, accelerated at a high rate of speed, and traveled side by side until they struck the Carmen vehicle in the intersection at Silver Lane. Eyewitnesses testified that the cars approached the intersection with engines roaring loudly at speeds estimated between 60 and 90 miles per hour. No witness testified to hearing brakes or skidding sounds and no tire or skid marks were found at the scene. Nor did the witnesses observe defendant’s vehicle swerve before or after impact in an attempt to avoid the collision. The People also produced three reconstruction experts who corroborated the eyewitness estimates of speed. They testified that, on the basis of studies made of the vehicles and of the site, defendants’ vehicles were traveling between 70-90 miles per hour at the time of impact. An off-duty police officer and his 18-year-old son witnessed the accident from their stopped vehicle on Silver Lane. They testified that immediately after the accident defendant requested the son not to tell the police that the two cars were drag racing and to "tell them we were only doing 55 m.p.h. or we’ll get in trouble.”
*232 It was the existence of this inculpatory statement by defendant that prompted the court to consider a joint trial with two juries. Because the statement was not admissible against codefendant Ahrens (see, Bruton v United States, 391 US 123), he moved for a severance and separate trial (see, CPL 200.40 [1]). The People opposed the application and requested that the indictments be tried jointly with a jury for each defendant. Over defendants’ objection the court ordered two juries selected and, in consultation with counsel, adopted a detailed procedure for identifying and segregating them. The trial proceeded with the juries hearing evidence common to the charges against both defendants but with one jury excused from the courtroom during presentation of evidence which was admissible only before the other. Each defendant was given the option of withdrawing his jury during presentation of the other’s defense. Neither did so. Separate openings and summations were employed and, without objection, one charge was given to both juries omitting mention of defendant’s statement. The juries were kept separated throughout the trial, they deliberated separately and neither was permitted to report a verdict until both had concluded deliberations. (For a full description of the procedures employed see, Santagata, One Trial, Two Juries — It Works in Extraordinary Cases, NYU, May 11, 1988, at 1, col 1.)
The right to trial by jury is guaranteed by both Federal and State Constitutions (US Const 6th Amend; NY Const, art I, § 2) and implemented by statute (CPL arts 260, 270). There is nothing in the Constitutions, the statutes or our decisions interpreting them, however, which expressly authorizes or prohibits the use of multiple juries in New York State. The People contend that the court had inherent power to fashion the dual jury procedure while defendants claim that such procedure was unauthorized. The power to regulate practice and procedure lies principally with the Legislature, not the courts (NY Const, art VI, § 30; see, Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5-6). However, the Constitution permits the courts latitude to adopt procedures consistent with general practice as provided by statute (id.). Although the Legislature has not addressed the practice followed in this case, its preference for joint trials is clear. In the interest of judicial economy it has granted the courts broad discretion to join a wide variety of charges and parties for prosecution if doing so does not jeopardize the rights of the defendants (CPL 200.20 and 200.40). In addressing the scope of *233 the power to be implied by that section, we have held that if proof against codefendants is supplied by the same evidence only the most cogent reasons warrant a severance (see, People v Bornholdt, 33 NY2d 75, 87).
In this case the People’s evidence against the two defendants was the same except for defendant’s inculpatory statement and the use of dual juries was clearly an attempt by the court to abide by our directions and still preserve Ahrens’ right to confrontation. The court’s power to employ multiple juries to do so, while not explicit in the statute, may logically be implied from its terms (cf., People v Teicher, 52 NY2d 638, 650-652). Moreover, the method it adopted is consistent with the general practice and procedure authorized by the Legislature in the joinder statutes and it is in accord with the powers granted by New York’s Constitution (NY Const, art VI, § 30). That the procedure chosen to further the legislative purpose was novel did not render it improper. The courts may adopt new procedures which are fair and which facilitate the performance of their responsibilities (see, Judiciary Law § 2-b [3] ["A court of record has power * * * to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it”]).*
Our reasoning is similar to that adopted by other States which have held the procedure impliedly authorized under similar grants of discretionary power over joinder and severance of indictments (see, e.g., People v Wardlow, 118 Cal App 3d 375, 173 Cal Rptr 500; State v Corsi, 86 NJ 172, 430 A2d 210; People v Church, 102 Ill App 3d 155, 429 NE2d 577), concluding that the use of multiple juries is merely a partial form of severance to be evaluated under standards for reviewing severance motions generally. Indeed, several courts have refused to reverse convictions in the absence of identified prejudice even after determining that the trial court lacked *234 power to impanel multiple juries (see, e.g., State v Lambright, 138 Ariz 63, 673 P2d 1; State v Watson, 397 So 2d 1337 [La], cert denied 454 US 903).
Nor is the procedure inherently prejudicial. The overwhelming body of judicial authority in the Nation holds that the use of multiple juries, whether statutorily authorized or not, does not deny defendants their constitutional right to a jury trial or, in the absence of identified prejudice, to due process of law (see, Annotation, Propriety of Use of Multiple Juries at Joint Trial of Multiple Defendants in State Criminal Prosecution, 41 ALR4th 1189; Annotation, Propriety of Use of Multiple Juries at Joint Trial of Multiple Dependents in Federal Criminal Case, 72 ALR Fed 875). Commentators have also accepted the practice (see, Gaynes, Two Juries/One Trial: Panacea of Judicial Economy or Personification of Murphy’s Law, 5 Am J Trial Advoc 285 [1981]; Note, Criminal Law — Multiple Jury Joint Trials — On the Joint Trial of Two Defendants, the Empanelling of Two Juries Simultaneously is Permissible, 2 Fordham Urb LJ 407) and the American Bar Association has approved its use (see, ABA Standards for Criminal Justice, Joinder and Severance, standard 13-3.2, at 13-36 [2d ed 1980]). We agree with these authorities.
Nevertheless, we share the reservations other courts have expressed. We affirm here because we are satisfied that the Trial Justice exercised her discretion within permissible legal limits when she ordered two juries and that the procedure did not prejudice the defense. Customarily, when a court is presented with a Bruton problem because of inculpatory out-of-court statements by one or both codefendants, it has the option of (1) deleting references to the codefendant in the statement, (2) seeking the consent of the People to a joint trial without the evidence or (3) ordering separate trials. In this case, defendant’s statement could not be redacted and the use of the only other option, a joint trial without the statement or separate trials in a case involving a race between two cars, would result in serious prejudice to the People. Moreover, the trial involved over 25 witnesses, five of them reconstruction experts, and recalling all these witnesses in two separate trials would be not only time consuming and expensive to the People but inconvenient to the witnesses. Conversely, the evidence which was not admissible against the codefendant was limited and did not require frequent removal of the juries. Under the circumstances, the harm to defendant, if any, resulting from the use of separate juries was little more than *235 that occurring in the usual joint trial and existed only because of the logistics of managing two separate juries. The risk of error arising from the procedure was clearly outweighed by judicial economy, witness convenience and the possibility of prejudice or inconsistent verdicts which might result from sequential trials.
It should be clear, however, that multiple juries are the exception, not the rule. In this day of massive caseloads and an overburdened criminal justice system judicial economy is not a negligible consideration and joint trials with multiple juries have obvious attractions, particularly in cases involving Bruton problems (see, Bruton v United States, 391 US 123, supra) or antagonistic defenses. The first order of business of the criminal courts, however, is justice, not economy or convenience and the use of multiple juries can only magnify the problems inherent in joint trials because of the need to insulate the juries from inadmissible evidence or argument. Multiple juries are to be used sparingly and then only after a full consideration of the impact the procedure will have on the defendants’ due process rights and after thorough precautions have been taken to protect those rights. We are satisfied that the Trial Justice properly did so in this case.
Defendant also contends the evidence was insufficient to establish his guilt. We agree with the Appellate Division that the evidence, viewed in the light most favorable to the People, supported the jury’s verdict. Section 125.10 of the Penal Law provides that a person is guilty of the crime of criminally negligent homicide when, with criminal negligence, he causes the death of another person. A person acts with criminal negligence with respect to a result when "he fails to perceive a substantial and unjustifiable risk that such result”, death in this case, will result (see, Penal Law § 15.05 [4]). The failure to perceive this risk must constitute a gross deviation from the standard of care which a reasonable person would have observed under the same circumstances (id.).
What amounts to criminal negligence "depends, of course, entirely on the circumstances of the particular conduct” (People v Haney, 30 NY2d 328, 335). Certain guiding principles can be stated, however. First, criminal liability cannot be predicated upon every careless act merely because its carelessness results in another’s death. Second, criminal negligence involves the failure to perceive the risk in a situation where the offender has a legal duty of awareness. Third, liability for *236 criminal negligence should not be imposed unless the inadvertent risk created by the conduct would be apparent to anyone who shares the community’s general sense of right and wrong. Finally, the finder of fact must evaluate the actor’s failure of perception and determine whether, under all the circumstances, it was serious enough to be condemned (see, People v Haney, 30 NY2d 328, 335, supra; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 125, at 492-493).
Contrary to defendant’s contention, the People proved more than excessive speed in this case. There was evidence introduced that defendant failed to observe a vehicle plainly visible in front of him or take steps to avoid it, and that his failure was caused by engaging in a race with another car on a busy divided highway in a metropolitan area. This evidence is sufficient to support the jury’s verdict finding defendant guilty of criminally negligent homicide for failing to perceive a substantial and unjustifiable risk that death would result from his conduct (see, Penal Law §§ 125.10, 15.05 [4]).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order affirmed.

 CPL 200.40 was amended subsequent to this trial. The amendment authorizes the court to order joinder or severance "or provide whatever other relief justice requires” (CPL 200.40 [1], L 1984, ch 672, §2). The amendment was precipitated by concerns of "unwarranted burdens on the criminal justice system and * * * unfair hardship on crime victims and other witnesses” (see, Mem of Governor Cuomo, Aug. 1, 1984, 1984 McKinney’s Session Laws of NY, at 3631). The quoted provision of the amendment is similar to rule 14 of the Federal Rules of Criminal Procedure which authorizes the court to sever indictments or "provide whatever other relief justice requires”. The Federal courts have construed rule 14 as authorizing multiple juries (see, United States v Rowan, 518 F2d 685, 689-690, cert denied sub nom. Jackson v United States, 423 US 949).