OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Defendant-appellant and his codefendant Alberto Rosario consented to trial by dual juries, at which the trial court followed virtually all of the procedures described, and cau
 
 *559
 
 tiously approved, in
 
 People v Ricardo B.
 
 (73 NY2d 228)— except sealing of the first jury’s verdict until the second verdict was returned. We reject defendant’s contention that this departure from
 
 Ricardo B.
 
 requires us to reverse defendant’s conviction.
 

 The murder charges against defendant stemmed from the robbery of Blue Star Paper Products in Brooklyn, planned by defendant, codefendant Rosario, David Gomez and Jose Nazario, who was the People’s chief witness at trial, in retaliation for Nazario’s discharge from Blue Star after pulling a knife on a co-worker. In the course of the robbery, one of the men shot and killed Sheldon Wrubel, the store manager.
 

 Defendant and Rosario consented to a single trial before two juries. The court fashioned a number of procedural safeguards to ensure that the two juries were segregated from each other throughout the trial. A single court officer was assigned to each jury, and remained with the jury whenever counsel and the Trial Judge were absent from the courtroom. The officers were instructed not to answer any questions, no matter how innocuous, from one jury concerning the members of the other jury.
 

 The courtroom itself was selected in consultation with all counsel, and the parties agreed on how documents would be handled to avoid inadvertent exposure to the wrong jury. The court instructed the jury as to "the absolute prohibition” against one jury gaining knowledge of another jury’s activities, and to avoid any contact with each other until the verdicts were reached, a warning repeated more than 20 times during the course of the trial. The juries heard separate opening and closing statements, but heard together all witnesses except an investigating detective and the portion of Nazario’s testimony that related only to Rosario. They were instructed that proceedings conducted in their absence were of no concern to them. The juries were also instructed separately as to the particular charges and defenses for each defendant.
 
 [1]
 

 Rosario’s jury announced that it had reached a verdict after just 65 minutes of deliberations. Defendant asked that the
 
 *560
 
 Rosario verdict be "sealed” until his jury completed its deliberations, to avoid any risk that they might learn of the Rosario verdict. The court refused, reasoning that such a procedure would require the Rosario jury to remain in the courthouse until defendant’s jury reached a verdict, an imposition it believed to be unreasonable. Concluding that any risk could be adequately alleviated through careful supervision of defendant’s jury by court personnel, it took the Rosario jury’s verdict convicting him on all counts.
 

 While the jurors were again cautioned not to speak to defendant’s jury, they were otherwise released and told they could speak about the case. The court officers were admonished not to reveal the fact of a verdict in the Rosario action to defendant’s jury. At noon the following day, defendant’s jury returned a verdict convicting him of felony murder, all four counts of robbery in the first degree, and manslaughter in the second degree. Defendant at no time alleged that the jury considering his case had been influenced improperly by the Rosario jury.
 

 Failure to Seal the First Verdict
 

 In
 
 People v Ricardo B.
 
 (73 NY2d 228,
 
 supra),
 
 we held that use of the dual jury was not inherently prejudicial, and endorsed its use, with reservations. We cautioned that the procedure should be used "sparingly” and that, when it is, "thorough precautions” be taken to protect the defendant’s due process rights
 
 (id.,
 
 at 235). While taking note of the procedures employed by the trial court in
 
 Ricardo B.,
 
 and finding them sufficient to protect the defendant’s due process rights, we did not indicate whether less stringent safeguards would render the procedure "inherently prejudicial.” We now answer that question in the negative.
 

 Trial by dual juries is, at root, a modified form of severance, and we have previously held that their use is "to be evaluated under standards for reviewing severance motions generally”
 
 (Ricardo B.,
 
 73 NY2d, at 233), which require a showing of prejudice to entitle a defendant to relief
 
 (People v Mahboubian,
 
 74 NY2d 174, 183). Recognizing that no prejudice was alleged or established below,
 
 [2]
 
 defendant urges us to hold that
 
 *561
 
 the safeguards described in
 
 Ricardo B.
 
 constitute a "mode of proceedings prescribed by law”
 
 (People v Mehmedi,
 
 69 NY2d 759). The suggested approach would require us to construe
 
 Ricardo B.
 
 as articulating the minimum constitutional standards for a dual-jury trial, such that any departure deprives a defendant of a fair trial and requires reversal without regard to actual prejudice
 
 (People v Crimmins,
 
 36 NY2d 230, 238).
 

 Defendant’s position is incompatible with our prior considerations of the particular error urged here: a postverdict allegation of improper influence on juror deliberations. Such a claim is generally asserted through a motion to set aside the verdict (CPL 330.30 [2]), and a defendant is entitled to a hearing on the issue upon assertion of facts indicating misconduct
 
 (People v Durling,
 
 303 NY 382).
 

 Absent a showing of prejudice to a substantial right, however, proof of juror misconduct does not entitle a defendant to a new trial
 
 (People v Ciaccio,
 
 47 NY2d 431). As we reiterated in
 
 People v Clark
 
 (81 NY2d 913, 914), ” ’not every misstep by a juror rises to the inherently prejudicial level at which reversal is required automatically’ * * *. Each case must be examined on its unique facts to determine the nature of the misconduct and the likelihood that prejudice was engendered” (citing
 
 People v Brown,
 
 48 NY2d 388, 394). In
 
 Clark,
 
 therefore, we concluded that absent a specific showing of improper influence, a jury verdict could not be impeached.
 

 Where dual juries are employed, the same standards control. Alleged errors during the course of a dual-jury trial need not be scrutinized pursuant to a higher standard than would be applicable in a single-jury trial. Reversal is not required simply because the court failed to implement the most restrictive procedures applicable to dual juries. Although trial courts retain discretion to adopt more restrictive procedures, the measures employed in
 
 Ricardo B.
 
 remain guidelines rather than minimum constitutional requirements.
 

 The particular error alleged in defendant’s case would not require reversal were this a single-jury case. Where complete severance has been granted, one codefendant generally is convicted prior to the other. That a jury may be aware another person has been convicted of participating in the alleged crime is not deemed inherently prejudicial in that context. Just as sealing of a verdict or a "gag order” is not constitutionally required when severed codefendants are successively tried, such protections are not invariably necessary
 
 *562
 
 to preserve the integrity of a dual-jury trial. A trial court may want to impose more restrictive procedures when circumstances, such as extensive publicity, suggest that a failure to seal the first verdict might lead to prejudice, and reversible error. Where the unwieldiness of the procedure
 
 (see, e.g., Hedlund v Sheldon,
 
 173 Ariz 143, 840 P2d 1008) would outweigh its prophylactic effect, however, a trial court may properly decline to follow such procedures.
 

 While defendant here requested that the court seal the first jury’s verdict, he never contended that its failure to do so resulted in any prejudice to him. His present assertions of prejudice are merely speculative. Defendant does not assert that his jury was aware of the fact of the Rosario verdict, let alone that it knew Rosario had been convicted.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed.
 

 [1]
 

 . Both defendants were charged with felony murder and four counts of robbery in the first degree. Defendant was also charged with intentional murder, and the court submitted second degree manslaughter as a lesser included offense of that count. Defendant’s defense was mistaken identity; counsel had argued in summation that the statement attributed to defendant was a fabrication, as was Nazario’s testimony. Rosario’s defense was duress.
 

 [2]
 

 .
 
 Although he requested that the first verdict be sealed, defendant did not move to set aside the verdict on the grounds that the failure to seal had in some way affected the jury deliberations
 
 (cf,
 
 CPL 330.30 [2]).