OPINION OF THE COURT
William C. Donnino, J.
The District Attorney moves to reargue this court’s decision denying his application to utilize two juries in a single trial of the severed defendants.
*264 Background
Both defendants are charged with acting in concert to kill five members of a Bronx family — three at one location and one at each of two other locations. Shortly thereafter, the defendants were arrested in Florida. In Florida, the defendants were questioned and search warrants were executed for a home and a car. There was a suppression hearing held for both defendants jointly. Each defendant was and is represented by two lawyers and the People are represented by three lawyers. The hearing was quite lengthy, and justifiably so, given the nature of the case and the issues raised. Twenty witnesses were called to testify at that hearing; the hearing consumed 29 court days and over 3,500 pages of minutes. The parties were given ample opportunity to file briefs, which ultimately totaled more than 525 pages, and raised numerous legal issues. The court rendered a 65-page opinion granting in part the defendants’ applications for preclusion of certain statements they allegedly made, and otherwise denying the motion to preclude or suppress other statements, identifications of the defendants, and the seizure of property from them, the house, and the car.
After the determination of the suppression issues, the People affirmed that they intended to seek admission at trial of the statements of each defendant. Each defendant’s statements, in part, point the finger of culpability at the other defendant. The defendants accordingly moved for separate trials. Recognizing the long-standing requirement that separate trials be ordered in such situation (see Bruton v United States, 391 US 123 [1968]), the People consented to severance and separate trials were ordered.
At some point, the People requested that the court conduct the separate trials by holding one trial for both defendants with two separate juries, one for each defendant (hereinafter referred to as the multiple jury trial). The court denied that application. Thereafter, apparently prompted by the prospective retirement of the lead prosecutor, the People asked for permission to reargue the application for a multiple jury trial.[1] The court granted the application for reargument. Upon rear-gument, the defendants opposed the application for the multiple jury trial.
*265 The Decision
After reargument, the court, in the interest of justice, adheres to its initial decision and denies the application for a multiple jury trial. There will be two separate trials.
The two separate trials may take place “back to back” (one after the other) or “simultaneously” (two judges in separate courtrooms, each presiding over the trial of one defendant with each witness from one trial testifying at the other shortly after completing his or her testimony at the other trial). Simultaneous trials, successfully executed before in the Bronx Supreme Court, would resolve many of the prosecutor’s concerns that are set forth in his application for one trial with one judge and two juries.[2] The District Attorney should advise whether he wishes to proceed with “simultaneous” separate trials or with “back to back” separate trials.
Discussion
The decision whether to try two defendants whose cases have been severed in a multiple jury trial is left to the sound discretion of the trial court. (People v Ricardo B., 73 NY2d 228, 232-233 [1989].)
The Court of Appeals, however, has taken care to emphasize that a multiple jury trial is far from the preferred procedure. Indeed, the Court cautioned that a multiple jury trial is “the exception, not the rule” and is to be used “sparingly.” (Ricardo B., 73 NY2d at 235; see also People v Irizarry, 83 NY2d 557, 560 [1994].) That is so, the Court explained, because the “first order of business of the criminal courts * * * is justice, not economy or convenience and the use of multiple juries can only magnify the problems inherent in joint trials because of the need to insulate the juries from inadmissible evidence or argument.” (Id.) In the end, the trial court must be concerned about the “impact the procedure will have on the defendants’ due process rights” and the need for a fair trial for both the People and the defendants. (Id.)
Here, the proffered benefits of a multiple jury trial do not outweigh the potential prejudice in denying the defendants— and in fact even the People — a fair trial.
Initially, the argued efficiency of a multiple jury trial in a case of this nature is more illusory than real. The trial of one *266 defendant will take several months; a multiple jury trial for both defendants will take significantly longer — once one factors in the need for the selection and accommodation of an additional jury of 18 (12 plus 6 alternates),[3] and the additional examinations of the witnesses that will take place by the additional defense counsel.[4] Normal trial delays with any jury trial during a trial spanning as many months as this trial is expected to take will be enhanced by the increased number of jurors and the lack of appropriate facilities in the current configuration of the courthouse and courtroom. Inordinate delay at the hearings in having the defendants produced by the Correction Department will undoubtedly continue, particularly because there is an order to keep the two defendants separate.[5] Significant delays, which will undoubtedly occur, can adversely impact the case for the People as well as the defendants. A second jury will not simplify matters to the benefit of due process.[6]
Finally, and most importantly, the legal issues in a multiple jury trial have not been fully explored, undoubtedly because the trial courts have heeded the Court of Appeals’ direction to use a multiple jury “sparingly.” Here, there will arise far more issues as to what one jury can hear and another cannot than the prosecutor recognizes. It is not only the evidence of the individual statements of the defendants that creates separation issues. As the prosecutor has revealed, the People’s case is based on circumstantial evidence of various types. With each defendant seeking to pin the crime on the other, cross-examination of witnesses from whom evidence can be gained emphasizing, for example, the motive and opportunity of one defendant against another, will raise separation issues. Indeed, there is the not-so-simple and recurring question in a multiple jury trial, especially one in which the defendants offer antagonistic defenses, of whether the jury of one defendant must be *267 excused while a particular witness is being examined by the other defendant’s attorney; and, there is the ever-looming risk that the answer will not be apparent until it is too late. From the People’s perspective, the overall risk of legal error, and the consequent retrial if there were a conviction, is significant.[7]
In the end, a multiple jury trial will protract the trial beyond reason; the protracted nature of the trial will generate issues that will impact on the fairness to the People in presenting their case in a timely and effective manner and has the serious potential for exposing one defendant unfairly to prejudicial testimony.
One way to minimize the prejudice to all and maintain the efficiencies the prosecutor seeks is to have the trials take place separately but simultaneously — i.e., two separate trials, two separate juries and judges, with one trial lagging slightly behind the other. To this court’s knowledge, it has been done once before in the Bronx Supreme Court and one of the judges who presided is of the view that it was successful. While the witnesses must testify twice, they can do so within a short period of time. That cuts down on the cost of transporting and housing witnesses. Also, both trials will undoubtedly move more readily to a timely conclusion than a multiple jury trial. And, finally, given that the defendants will obtain truly separate trials, there will be no prejudice to the defendants.
A multiple jury trial may be more advisable in a case where the evidentiary phase will be short, where accordingly the need for an extended number of alternates is less, where the defendants are not personally antagonistic to each other and the defense of each is not antagonistic to the other, and the *268 courthouse is structured to handle the not insignificant logistics of a multiple jury trial. This is not such a case.
The application for a multiple jury trial is denied.
[Portions of opinion omitted for purposes of publication.]

. The lead prosecutor has since retired from the District Attorney’s Office, but he was immediately thereafter hired to try the instant case.

. The suggestion during oral argument of the instant motion that those trials did not involve significant cross-examination of witnesses does not accord with the recollection of the judge who presided over one of those trials. (The other judge has since retired.)

. Unlike a normal joint trial of defendants where the defendants share 20 peremptory challenges, here two distinct juries would be selected and each defendant (in addition to the People) would be entitled to 20 peremptory challenges, for a total of 80.

. At the suppression hearing, the examination of the witnesses by the defense attorneys was quite protracted.

. The court and the parties, particularly a member of the prosecution team, complained of the inordinate delays in their production at the hearing without a jury, but were rarely successful in eliminating them.

. In the court’s experience, issues arise in the lives of the participants and even one set of jurors, not to mention the production of witnesses and imprisoned defendants and the unanticipated legal issues, that inevitably extend a trial of this nature well beyond expectations.

. (See People v Mahboubian, 74 NY2d 174 [1989].) At the joint trial reviewed in Mahboubian, primarily circumstantial evidence established that the defendants jointly conspired and attempted to commit art fraud. Each defendant attempted to show that the proof implicated only the other defendant. To that end, although neither defendant testified, each defendant cross-examined the People’s witnesses or called witnesses to explain how the other defendant had committed the crime alone, and each defendant’s summation upon that evidence largely focused on discrediting the other’s defense. The court found that their joint trial was overly prejudicial in part because the “People’s proof * * * was largely circumstantial” and there was “a substantial possibility that defendants’ presentation of antagonistic defenses with respect to how each defendant explained that proof caused the jury to infer that the conflict itself demonstrated both defendants’ guilt.” (74 NY2d at 186.) As already discussed, similar concerns and prejudice can be expected in a multiple jury trial of the defendants in this case.