*529 OPINION OF THE COURT
C. Randall Hinkichs, J.
The instant indictment charges all three codefendants with murder in the second degree, in violation of Penal Law § 125.25 (3) under a felony murder theory of causing the death of a nonparticipant during the course of or immediate flight from a robbery. In addition, Anthony Ryans is also charged alone with a single count of murder in the first degree, in violation of Penal Law § 125.27 (1) (a) (vii) as the People allege that he actually fired the weapon which resulted in the death of a nonparticipant during the course of or immediate flight from the robbery.
On January 27, 2005, all three defendants made oral applications for severance of their case from each of the codefendants. All three stated the grounds for severance to be Bruton considerations, in that all three codefendants gave statements implicating the other two participants to varying degrees. All three also asserted that severance was required based on inconsistent or antagonistic defenses which would be proffered at trial.
In response, the People unequivocally represented that they would not be willing to proceed to trial without the defendants’ statements and that there was no way to effectively redact the statements so as to proceed with a single trial of all three defendants. The People cross-moved, however, for partial severance by way of a dual jury trial for defendants Anthony Ryans and Gregory Felder, based on the large volume of evidence in common to both defendants.
The court ruled that severance, in some manner, would be granted and heard oral argument on the People’s application for a dual jury trial as to Anthony Ryans and Gregory Felder. The People represented that their application to try Ryans and Felder before dual juries, as opposed to either Ryans and Kelley or Felder and Kelley, is based on their position that Ryans, as charged in the indictment, fired the shot which resulted in the death, and that Felder is the “mastermind” of the alleged robbery/murder. Inasmuch as the People’s application pertained to defendants Ryans and Felder, counsel for defendant Kelley took no position on the application.
The People, in support of their application for a dual jury trial for Ryans and Felder, submit that all three defendants are *530 charged with acting in concert as to the felony murder, so the dual jury trial would involve the same theory and the same criminal transaction (with Ryans having the additional count of murder in the first degree). The People point out that there are 24 witnesses in common to Ryans and Felder, including a civilian eyewitness who should not have to testify in three separate trials. The only witnesses who are not common to Ryans and Felder are the two different police detectives who took the written statements from Ryans and Felder, respectively. The People submit that “if proof against codefendants is supplied by the same evidence only the most cogent reasons warrant a severance.” (People v Ricardo B., 73 NY2d 228, 233 [1989], citing People v Bomholdt, 33 NY2d 75, 87 [1973].)
The People submit that they will be prejudiced if they are required to conduct three separate trials. The People direct the court’s attention to People v Ricardo B. (73 NY2d 228 [1989]) and People v Singh (266 AD2d 569 [2d Dept 1999]), among others, as providing support for the use of dual juries under similar circumstances. The People submit that, in light of all of the circumstances of the instant case, particularly the number of witnesses in common, judicial economy dictates that a dual jury trial be ordered for defendants Ryans and Felder.
Defendant Ryans, through counsel, opposes the application for a dual jury trial. Ryans concedes that judicial economy and witnesses in common are appropriate considerations; however, he urges such considerations cannot take precedence over the potential for prejudice to the defendant. Ryans submits that he will be prejudiced by the fact that counsel for Felder will attempt to elicit, through cross-examination, damaging evidence against Ryans. Ryans submits that he will, in effect, have to defend against two prosecutors, the Assistant District Attorney and counsel for Felder. Separate trials are, therefore, according to Ryans, required because of antagonistic defenses between Ry-ans and Felder.
Felder, through counsel, also contends that Ryans and Felder have antagonistic defenses. Counsel for Felder requested, in support of his application in opposition to a dual jury trial with Ryans, an in camera conference with the court. Felder urged, in this regard, that he should be permitted to explain his defense to the court in camera without revealing his defense strategy to the People in open court. This procedure, he argued, would permit the court to decide whether the defenses of Felder and Ryans were sufficiently antagonistic so as to warrant separate *531 trials without requiring him to reveal his defense strategy to the People. The People opposed this request for an in camera offer by counsel for Felder. The court permitted counsel for Felder to make an in camera offer as to his proposed defense at trial, citing People v Burrows (280 AD2d 132 [4th Dept 2001]) and People v Hall (179 Misc 2d 488 [Sup Ct, Monroe County 1998]) by analogy only, since those cases clearly apply to requests for severance by a single defendant of various unrelated counts in an indictment, and not, as here, multiple defendants. Prior to conducting the in camera proffer in chambers, Mr. Felder voluntarily waived, on the record, his own personal appearance in chambers and permitted his counsel to act on his behalf for this limited purpose. The in camera offer by counsel for Felder was taken down by the court reporter for the record. The minutes of this in camera offer shall be sealed and shall remain in the court file in the event of the need for future appellate review.
While the court will not reveal the intended defense outlined by counsel in camera, counsel for Felder acknowledged, on the record in open court in the presence of all defendants and counsel and the prosecutor, that his defense would involve highlighting Ryans’ involvement in the instant offense, through his (counsel for Felder) cross-examination of the witnesses.
The leading case on the use of dual juries, as cited by both sides, is People v Ricardo B. (73 NY2d 228 [1989]). The Court of Appeals in Ricardo B. specifically authorized the practice of dual juries as a form of “partial severance” in cases where a large volume of the evidence is common to all defendants. The Court in Ricardo B. warns, however, that “[m]ultiple juries are to be used sparingly and then only after a full consideration of the impact the procedure will have on the defendants’ due process rights and after thorough precautions have been taken to protect those rights.” (Id. at 235.)
In the instant case, the court finds that a dual jury trial of Ryans and Felder is required as an appropriate exercise of judicial economy and, with precautions outlined below, the due process rights of each defendant will be carefully protected. In arriving at this determination the court has taken into account: (1) the defendants are each charged with acting in concert in relation to the same criminal transaction; (2) the large volume of evidence in common to both defendants; (3) the prosecution’s intention to call approximately 24 witnesses whose testimony would be the same as to each defendant; and (4) that one of the witnesses lives out of state, in Texas.
*532 The court is not persuaded by defense arguments that entirely separate trials are the only guarantee of a fair trial. In reaching this conclusion, the court has taken into account the in camera application by counsel for Felder both in respect to the potential for prejudice to Felder and also the impact Felder’s defense would have on Ryans. First, defense arguments that Bruton considerations demand a separate trial are clearly adequately addressed by the fact that each jury will only hear the statements made by the particular defendant on which that jury will be called upon to render a verdict. Further, the court agrees with the People that the fact that each defendant engaged in different conduct in furtherance of the alleged criminal transaction does not create antagonistic defenses. The standard for determining whether defenses are so antagonistic as to require severance is explained in People v Mahboubian (74 NY2d 174 [1989]) as follows: “[severance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant’s guilt.” (Id. at 184 [emphasis added].)
Inasmuch as the defendants are each charged with acting in concert to commit the crime of felony murder (i.e., a homicide to a nonparticipant during the course of or immediate flight from an armed robbery), it is consistent and logical, rather than antagonistic, that each defendant would be engaging in different conduct during the course of and commission of the crime or immediate flight therefrom. Nothing in Felder’s in camera proffer compels a different conclusion. It is important to note, in this regard, that severance is not required when the possibility of antagonistic defenses is “merely colorable or speculative.” (People v Bornholdt, 33 NY2d 75, 87 [1973]; People v Martin, 154 AD2d 554 [1989].) Here, Ryans has not yet given any indication as to his intended defense, nor is he required to. Therefore, in the absence of information as to Ryans’ proposed defense, any claim that the defenses of Ryans and Felder are antagonistic is necessarily speculative.
In order to assure that the due process rights of each defendant are carefully protected, the court orders the following precautions to be taken: (1) separate opening and closing arguments will be made by the prosecutor and defense counsel to each jury; (2) each jury will be excused from the courtroom during presentation of evidence of the inculpatory statement of the *533 codefendant; (3) each jury will be excused from the courtroom during the testimony of the civilian witness, Ms. Beth McCue, the witness who was inside the store at the time of the shooting. In other words, Ms. McCue will be examined by the People and defense for one defendant before his own jury only until conclusion, and then, examined by the People and defense for the other defendant before his own jury. The court is mindful of the emotional trauma of this witness having to testify twice; however, to avoid any potential prejudice, in the court’s view, it is necessary here; (4) the juries will be kept separated at all times, including deliberations; (5) each defendant will be given the option of withdrawing his own jury during presentation of the codefendant’s defense, should either defendant choose to present witnesses or evidence. In addition, the court will meet with counsel each trial day to review the witness list for that day and, thereafter, entertain applications that either jury be excused from the courtroom for any particular witness. The court has reserved decision on the limited issue of whether each defendant will be permitted to remain in the courtroom during presentation of evidence to be heard only by the other’s jury.
Accordingly, with the limitations ordered herein, the court grants the People’s cross motion to proceed with a dual jury trial for Anthony Ryans and Gregory Felder.