DiFIORE, Chief Judge (dissenting).
It is undisputed that the five-year postindictment delay in prosecuting defendant, who was incarcerated the entire time, was extraordinary, triggering the "sensitive weighing process of the diversified factors present in the particular case," as set forth in People v. Taranovich, 37 N.Y.2d 442, 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 (1975). There is also no question that the lengthy pretrial incarceration of a defendant who was 16 years old at the time of arrest is presumptively prejudicial. However, it remains incumbent upon us, in determining whether dismissal of the indictment is required, to balance all of the Taranovich factors in this particular case. In doing so, on this factual record, I would conclude that defendant, who stood accused of the intentional murder of a 15 year old-a grave offense exempt from the *316 five-year statute of limitations for felonies-was not deprived of his right to a speedy trial, or the due process right to prompt prosecution.
I.
Defendant was arrested and arraigned on a felony complaint on May 29, 2008, five days after the murder was committed, ***20 and was remanded without bail.[1] In June 2008, he and codefendant Jamal Armstead were charged jointly in a single indictment with murder in the second degree, two counts of attempted murder in the second degree (involving another victim) and criminal possession of a weapon in the second degree. In August 2008, defendant filed an omnibus motion seeking, among other relief, a severance. The motion was denied in October 2008, except for the portion of the motion seeking a severance under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The severance issue was held in abeyance pending the resolution of a Huntley hearing in Armstead's case, as the codefendant's statement implicated defendant as the shooter. Armstead's suppression hearing was held in May and June 2012, whereupon Supreme Court denied Armstead's motion to suppress and defendant's trial was severed in August 2012 ( CPL 200.40 ).
In May 2013, defendant moved to dismiss the indictment under CPL 210.20(1), arguing that the five-year delay in his prosecution violated his state right to due process and his federal constitutional right to a speedy trial, as well as his state statutory right to a speedy trial under CPL 30.20. The factual allegations in the motion concerning the reasons for the first four years of adjournments-from the commencement of the action in 2008 to 2012, when the pretrial hearings for the codefendant were held-can fairly be characterized as sparse, except for the litany of adjournments. One thing the motion does make clear is that defendant was brought to court with diligence on essentially a monthly basis from the time of his June 2008 indictment until May 2012 and that, on each occasion, "the matter was adjourned." Defendant made no claim that he objected to any of the adjournments during this four-year period or that he raised any speedy trial protest during these proceedings. Indeed, there is nothing in the motion papers to indicate anything other than his silent acquiescence to the continuation of the case in this manner. To be precise, although he averred that he was incarcerated for the five-year period, he simply asserted that "[t]he reasons for the delay are not clear from the court file."
Defendant's motion papers specifically aver that after the cases were severed in August 2012, the People elected to try Armstead first. The motion sets forth that defendant's matter ***21 was adjourned for two months beginning in May 2012 while pretrial hearings were conducted in Armstead's case. It also alleges that defendant's case was adjourned for the period attributable to both Armstead's first trial in October 2012, which ended in a mistrial after the jury rendered a partial verdict convicting the codefendant of criminal possession of a weapon but failed to convene for the continuation of the trial due to Hurricane Sandy, and Armstead's second trial in April 2013, which was ongoing when defendant filed his dismissal motion. Defendant maintained that the "8-week period for the co-defendant's two trials does not justify the 5 year delay in bringing defendant ... to trial." Thus, the focus of defendant's motion is plainly on the delay in his prosecution caused by *317 the People's attempt to resolve the case against codefendant Armstead before defendant was tried. Aside from defendant's protest as to the entire five-year period of delay, the requisite factual allegations set forth in support of his motion to dismiss on speedy trial grounds narrowly addressed those proceedings that began in May 2012-four years after defendant's arrest and one year prior to the filing of the speedy trial motion (see CPL 210.45 [1] ).
Finally, defendant posited that,
"[b]ased upon the length of the post-arrest delay in this case, the People must establish good cause to justify such delay. In the event the People are unable to establish good cause for the 5 year delay in bringing the instant defendant to trial, defendant moves, pursuant to CPL 210.20(1)(h) to dismiss the indictment."
Defendant's motion was devoid of any allegation that he had suffered prejudice-actual or presumed-as a result of the delay. Rather, he observed that, where the delay is "lengthy and unjustifiable," dismissal of the indictment may be required even in the absence of actual prejudice.
In response, the People conceded that the five-year delay was "atypically long," but asserted that dismissal of the murder indictment was not warranted. The People noted that Armstead had consented to several adjournments beginning in January 2009 while a series of three ADAs attempted to secure his cooperation against defendant. Armstead rejected the cooperation agreement in June 2011 and then moved for reassignment of counsel. After new counsel was assigned in July 2011, "every single adjournment of Armstead's case [was] at ***22 the request of Armstead's counsel"-including several adjournments after the People answered ready to try Armstead in May 2012. These latter adjournments were granted over the People's objection that the delays would impact defendant. The People further observed that, since defendant's speedy trial motion was filed, Armstead's second trial had ended in a mistrial and another six-month adjournment was granted at Armstead's counsel's request. They maintained that they decided to try Armstead first in an attempt to obtain his testimony against defendant-observing that "[h]is testimony would significantly enhance the overall nature and quality of the evidence against the defendant." The People conceded that Armstead had repeatedly maintained through his counsel that he would not testify against defendant, but asserted that "Armstead himself has wavered on this point."
The People also pointed out that defendant had been indicted for two separate assaults that occurred during the course of his pretrial incarceration. In January 2009, at the early stages of the case, he was indicted in Bronx County for gang assault and other related charges. Those charges were later dismissed in March 2013. In addition, defendant was indicted in October 2011 in New York County for attempted gang assault in the first degree, attempted assault in the first degree and two counts of assault in the second degree, based on a "jailhouse assault" that took place at the Manhattan Detention Center. He was convicted of assault in the second degree after an April 2013 jury trial and was sentenced to 4½ years' imprisonment, to be followed by three years' postrelease supervision (PRS).
Supreme Court denied defendant's motion, without a hearing, after engaging in the appropriate balancing test, holding that his right to a speedy trial had not been violated. Notably, although the court recognized that a significant portion of the delay was due to codefendant Armstead *318 (and his counsel)-particularly beginning in July 2011-the court also observed that the People have "broad discretion" when determining the order in which to prosecute codefendants. The court pointed out that the People "consistently push[ed Armstead's] attorney to get ready for trial." Moreover, the court held that there were several additional reasons for the various delays, including the substitution of counsel for both the People and defendants and proceedings relating to defendant's other pending indictments. The court ultimately concluded that there was good cause for the delay. ***23 In June 2014, defendant made a second motion to dismiss the indictment on speedy trial grounds. However, defendant pleaded guilty on September 23, 2014 to the reduced charge of manslaughter in the first degree in full satisfaction of the indictment, in exchange for a sentence of 12 years' imprisonment, to be followed by five years' PRS. The manslaughter sentence was ordered to be served concurrent with the previously imposed 4½-year sentence for the 2011 assault, and to run nunc pro tunc from the date of defendant's May 2008 arrest.[2]
The Appellate Division affirmed, with two Justices dissenting, agreeing that defendant's right to a speedy trial had not been violated ( 143 A.D.3d 451, 39 N.Y.S.3d 395 [1st Dept. 2016] ). The Court likewise held that there was good cause for the delay. The Court opined that, although the attempt to get Armstead to testify "certainly played an important role," it was not the only source of delay. It held that "much of the delay was occasioned by requests for adjournments by defendant and/or his codefendant for motion practice, change of counsel, discovery proceedings, unavailability of co-defendant's counsel and the like" ( 143 A.D.3d at 455, 39 N.Y.S.3d 395 ). The Court also concluded that the People's attempt to secure Armstead's cooperation was made in good faith. After balancing all of the relevant factors, the Court determined that there was no speedy trial violation. The dissent, however, would have dismissed the indictment, finding that the People failed to show good cause for the delay and hypothesizing that on the basis of the length of the delay it was "likely" that the defense was prejudiced. The majority noted that the dissent "minimize[d] the defense side of the equation in determining the reason for the delay" ( 143 A.D.3d at 455, 39 N.Y.S.3d 1 ).
***24 II.
The United States Constitution guarantees a defendant a "right to a speedy and public trial" ( U.S. Const. 6th Amend). Recognizing that it is difficult to identify exactly when that right has been abridged, the United States Supreme Court has imposed a balancing test requiring an evaluation of the particular circumstances of each case (see *319 Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 [1972] ). The Court identified four relevant factors to be weighed: "[l]ength of [the] delay, the reason for the delay, the defendant's assertion of his right, and [actual or potential] prejudice to the defendant" ( 407 U.S. at 530, 92 S.Ct. 2182 ).
Although New York does not have a specific constitutional speedy trial provision, we do have statutory speedy trial requirements under the due process doctrine ( CPL 30.20 ; Civil Rights Law § 12 ). We have also recognized that "unreasonable delay in prosecuting a defendant constitutes a denial of due process of law" and that undue delay may require dismissal of the indictment, even when there is no resulting prejudice to the defendant ( People v. Staley, 41 N.Y.2d 789, 791, 396 N.Y.S.2d 339, 364 N.E.2d 1111 [1977] ). "In this State, 'we have never drawn a fine distinction between due process and speedy trial standards' when dealing with delays in prosecution" ( People v. Vernace, 96 N.Y.2d 886, 887, 730 N.Y.S.2d 778, 756 N.E.2d 66 [2001], quoting People v. Singer, 44 N.Y.2d 241, 253, 405 N.Y.S.2d 17, 376 N.E.2d 179 [1978] ). We have evaluated both the speedy trial right and the due process right to prompt prosecution under a multi-factor balancing test derived from Barker (see People v. Taranovich, 37 N.Y.2d 442, 373 N.Y.S.2d 79, 335 N.E.2d 303 [1975] ).
"The following factors should be examined in balancing the merits of an assertion that there has been a denial of defendant's right to a speedy trial: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" ( 37 N.Y.2d at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ).
The evaluation of these factors requires "a sensitive weighing process of the diversified factors present in the particular case" and "no one factor or combination of the factors ... is necessarily decisive or determinative of the speedy trial claim" ( 37 N.Y.2d at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ).
Where there has been an extended period of delay, the burden is on the People to establish good cause (see ***25 Singer, 44 N.Y.2d at 254, 405 N.Y.S.2d 17, 376 N.E.2d 179 ). However, "[t]he Appellate Division's determination that the People established good cause for the delay in prosecuting the defendant is a mixed question of law and fact," which is beyond our review if there is support in the record (see Vernace, 96 N.Y.2d at 887, 730 N.Y.S.2d 778, 756 N.E.2d 66 ).
We have made clear that "there is no specific temporal duration after which a defendant automatically becomes entitled to release for denial of a speedy trial" ( Taranovich, 37 N.Y.2d at 444-445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). "Moreover, the various factors must be evaluated on an ad hoc basis since no rigid precepts may be formulated which apply to each and every instance in which it is averred that there has been a deprivation of the speedy trial right" ( Taranovich, 37 N.Y.2d at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). Thus, the five-year delay in this case is not, in itself, a tipping point-particularly where, as here, the five-year felony statute of limitations is inapplicable to the crime of murder (see CPL 30.10[2] ). Moreover, this case does not involve prosecutorial inaction resulting in preindictment or preaccusatory delay (see Singer, 44 N.Y.2d 241, 405 N.Y.S.2d 17, 376 N.E.2d 179 ; People v. Staley, 41 N.Y.2d 789, 396 N.Y.S.2d 339, 364 N.E.2d 1111 [1977] ). Nor does it involve the People's failure to bring defendant into the court to answer *320 the charges (see People v. White, 32 N.Y.2d 393, 345 N.Y.S.2d 513, 298 N.E.2d 659 [1973] ; People v. Winfrey, 20 N.Y.2d 138, 281 N.Y.S.2d 823, 228 N.E.2d 808 [1967] ). This case involves a five-year delay in a postindictment courtroom setting where there are regular calendar adjournments while defendant and his counsel are present.
III.
Here, the first factor of length of delay clearly weighs in defendant's favor. The five-year delay between defendant's arrest and his speedy trial motion, during which defendant was held in pretrial detention, was an undisputed fact and is presumptively prejudicial so as to trigger the speedy trial balancing test (see Barker, 407 U.S. at 530, 92 S.Ct. 2182 ). Prompt prosecutions are fundamentally sound and serve the needs of both defendants and society. Five years of postindictment delay, even in a murder case, is antithetical to our long established goals in the speedy trial universe.
As to the second factor, the reason for the five-year delay, the facts are in dispute. Both courts below held that the People established good cause for the delay attributed to the codefendant. Rather significantly, both courts also found that there were a variety of factors that contributed to the overall delay, including defendant's actions. The primary question as to one ***26 part of the delay is whether the People's decision to defer defendant's prosecution while pursuing a cooperation agreement with Armstead amounts to good cause. A similar situation was presented in Barker, where the Supreme Court held that a delay of four years so that the codefendant in a double murder could be used as a witness against the defendant was "too long ... particularly since a good part of that period was attributable to the Commonwealth's failure or inability to try [the codefendant] under circumstances that comported with due process" ( 407 U.S. at 534, 92 S.Ct. 2182 ). Similarly, the prosecution believed it had a stronger case against the codefendant and that they could "assure his testimony" against Barker if they convicted the codefendant first ( 407 U.S. at 516, 92 S.Ct. 2182 ). There, the codefendant was tried six times-including two hung juries and two convictions that were then litigated and overturned on appeal. However, after balancing all of the other relevant factors, the Court concluded that Barker was not deprived of his right to a speedy trial. The Court noted the lack of prejudice-Barker was only incarcerated for 10 months of the pretrial delay and there was no indication that witnesses had gone missing or suffered memory loss (see 407 U.S. at 534, 92 S.Ct. 2182 ). "More important," was the Court's conclusion that "Barker did not want a speedy trial" ( 407 U.S. at 534, 92 S.Ct. 2182 ). The Court observed that he had not asserted his speedy trial right for nearly four years and that the record suggested that Barker was "gambling on [the codefendant's] acquittal" ( 407 U.S. at 535, 92 S.Ct. 2182 ). Indeed, Barker's counsel had essentially conceded as much.
Here, the majority does not even attempt to analyze this case under the federal constitutional speedy trial right. Indeed, as in Barker, defendant's failure to assert his speedy trial right for five years on a record that, despite regular court appearances, does not indicate that he ever objected to four of the five years of delay would be a significant factor weighing against him (see People v. Prosser, 309 N.Y. 353, 359-360, 130 N.E.2d 891 [1955] ; compare United States v. Tigano, 880 F.3d 602 [2d Cir.2018] ). One could reasonably conclude from this record that defendant, who faced a minimum sentence of 15 years *321 to life imprisonment on the murder charge, and potential consecutive prison sentences on the two assault indictments, had reason to bide his time and acquiesce in the delay in order to await the outcome of Armstead's first trial and assess the strength of the People's case.
In any event, the People have "broad discretion in determining when and in what manner to prosecute a suspected offender"
***27 ( People v. Di Falco, 44 N.Y.2d 482, 486, 406 N.Y.S.2d 279, 377 N.E.2d 732 [1978] ). This discretion is not without boundaries and a defendant's trial cannot be postponed indefinitely while the People pursue a jointly indicted codefendant's conviction or cooperation. To that end, the lengthy adjournments granted by the court to Armstead's counsel at the latter stage of this case, over the People's objection on defendant's behalf, are at odds with defendant's right to a speedy trial at that late juncture.[3] However, the record supports the reasonableness of the People's determination that Armstead's testimony would strengthen the evidence against defendant-the shooter. Significantly, there is no record to support that the People were not diligent, were negligent or acted in bad faith in their efforts to prosecute Armstead and obtain his cooperation against defendant (cf. Doggett v. United States, 505 U.S. 647, 652-653, 112 S.Ct. 2686, 120 L.Ed.2d 520 [1992] ; People v. Romeo, 12 NY3d 51, 56, 876 N.Y.S.2d 666, 904 N.E.2d 802 [2009] ). As this period of delay was not a result of prosecutorial inaction, negligence or bad faith, the nature of any presumed prejudice is weighed less as a consequence (see Doggett, 505 U.S. at 652-653, 112 S.Ct. 2686 ). Nor is this period of delay viewed in isolation. As the courts below also pointed out, there are several additional reasons that contributed to the other periods of delay-including factors that were beyond the People's control or were directly attributable to defendant (substitution of counsel, trial adjournments, etc.). Like Barker, this is a close case, but it appears that there is record support for the Appellate Division's conclusion that the People established good cause for the delay in this case and the issue is beyond our further review (see Vernace, 96 N.Y.2d at 887, 730 N.Y.S.2d 778, 756 N.E.2d 66 ).[4]
Under no circumstances do we discount the extensive length of the pretrial delay here. In order to expedite the matter, it may have been better to conduct a joint trial as a modified form of severance with separate juries for defendant and Armstead, especially when Armstead went to trial (see ***28 People v. Ricardo B., 73 N.Y.2d 228, 538 N.Y.S.2d 796, 535 N.E.2d 1336 [1989] ; People v. Irizarry, 83 N.Y.2d 557, 560, 611 N.Y.S.2d 807, 634 N.E.2d 179 [1994] ). Although trials with "multiple juries are the exception, not the rule," we have observed that they do "have obvious attractions, particularly in cases involving Bruton problems" ( 73 N.Y.2d at 235, 538 N.Y.S.2d 796, 535 N.E.2d 1336 ).
The third factor, the nature of the underlying charge (here, the intentional murder *322 of a 15 year old), is clearly in the People's favor. The grave nature of the charge, in itself, however, does not eclipse defendant's right to a speedy trial (see People v. Romeo, 12 N.Y.3d 51, 57, 876 N.Y.S.2d 666, 904 N.E.2d 802 [2009] ).
The fourth factor of pretrial incarceration presumptively weighs in defendant's favor, although not determinatively so, given that, for more than four years of the five-year period, he was simultaneously detained on other indictments relating to two separate violent felonies committed during the course of his pretrial incarceration.
The final factor in the case weighs against the defendant, as there was no allegation of actual prejudice to defendant in his motion papers and there is no apparent prejudice but for the pretrial incarceration, which has been fully accounted for in the fourth factor. Although a defendant is not necessarily required to show that he has been prejudiced by the delay, the circumstances of each particular case control, and whether or not the defense has been impaired can be a "critical" factor in the weight analysis (see Taranovich, 37 N.Y.2d at 446-447, 373 N.Y.S.2d 79, 335 N.E.2d 303 ). Here, despite that trial proceedings had been ongoing against Armstead, defendant made no allegation whatsoever that witnesses at the trials were having difficulty remembering the crime or that any witnesses were unavailable. Moreover, the witness testimony in Armstead's trials could have been a source of ample Rosario material to defendant's benefit. Nor can we ignore what courts have long recognized-"[d]elay is not an uncommon defense tactic" ( Barker, 407 U.S. at 521, 92 S.Ct. 2182 ). The delay did work in defendant's favor to the extent that, after the codefendant's trial resulted in mistrials, defendant received a very favorable sentence-concurrent terms of imprisonment for the reduced manslaughter conviction and the assault conviction.
In its prejudice analysis, the majority maintains that defendant has suffered "presumptive prejudice" (majority op. at 19, 72 N.Y.S.3d at 13, 95 N.E.3d at 315)-language that is used by the Supreme Court to denote an extensive period of pretrial incarceration that will trigger the speedy trial balancing test (see Barker, 407 U.S. at 530, 92 S.Ct. 2182 ;
***29 Doggett, 505 U.S. at 652, 112 S.Ct. 2686 ). However, as the majority observes, this prejudice is fully accounted for, under Taranovich, in the pretrial incarceration factor. In any event, under Doggett, presumptive prejudice must be evaluated on a sliding scale, in that not all delay is treated equally (see 505 U.S. at 656-658, 112 S.Ct. 2686 ). A delay resulting from bad faith weighs against the prosecution, while the weight "assign[ed] to official negligence compounds over time as the presumption of evidentiary prejudice grows" ( 505 U.S. at 657, 112 S.Ct. 2686 ). On the other hand, where the prosecution has been pursued with "reasonable diligence," the defendant must demonstrate specific prejudice (see 505 U.S. at 656, 112 S.Ct. 2686 ). As noted above, the delay in bringing defendant to trial did not involve bad faith or "protracted [ ]" negligence likely to threaten "the fairness of the accused's trial" (see 505 U.S. at 657, 112 S.Ct. 2686 ). In the conspicuous absence of any allegation in the motion papers of a specific prejudice to defendant, this factor weighs in the People's favor.
Clearly, five years is an extensive amount of time, even for a murder case, when the defendant remains incarcerated for the duration. The People, even while acting in good faith, must be wary of delays of this length when attempting to secure a codefendant's cooperation in a joint prosecution. However, the record supports the finding of the courts below that the People were making diligent efforts to move forward with the prosecution. In this context, it is duly noted that *323 the court brooked an unacceptable amount of delay in defendant's case as a result of codefendant's adjournments. Nevertheless, on this record, as defined by the pretrial motion papers, defendant apparently acquiesced in the bulk of the delay-between 2008 and 2012 (see CPL 210.45 ). Based on a careful balancing of all of the factors, the courts below did not err in denying defendant's motion to dismiss the murder indictment based on an alleged violation of defendant's due process right or right to a speedy trial. As this was the senseless murder of a 15-year-old victim, the most serious of offenses, the fact that defendant failed to allege any prejudice militates against the dismissal of the indictment under all the particular circumstances. Thus, I would affirm the Appellate Division order and uphold the denial of defendant's motion to dismiss the indictment.
Order reversed and indictment dismissed.
Judges Rivera, Stein and Wilson concur; Chief Judge DiFiore dissents in an opinion, in which Judges Garcia and Feinman concur.

There is no preaccusatory delay in this case.

Before the plea of guilty was entered, defense counsel acknowledged on the record that there was a second speedy trial motion filed in June that had not been decided and that he was withdrawing the motion. To the extent defendant now argues that the length of the delay at issue was beyond the five-year period designated in the first motion, that argument is not before this Court. Defendant expressly withdrew his second speedy trial motion prior to accepting the guilty plea. There is no indication whatsoever in this record that defendant's guilty plea was conditioned by the court or the People on the withdrawal of the second speedy trial motion and the motion, which was undecided, was therefore abandoned upon the entry of the plea (see People v. Alexander, 19 N.Y.3d 203, 218-219, 947 N.Y.S.2d 386, 970 N.E.2d 409 [2012] ). Thus, the length of delay that is properly before us is limited to the five-year period asserted in defendant's first speedy trial motion.

Although CPL 30.30 is not controlling to a CPL 30.20 speedy trial claim, it is relevant that the legislature has determined that this type of delay attributable to a joined codefendant would be excludable for speedy trial computation (see CPL 30.30[4][b] ).

Despite the majority's conclusion that there is no disputed issue of fact, the question of good cause necessarily entails a factual inquiry into the reasons for all of the delay and the merits of those reasons. Indeed, defendant himself argues only that there is no record support for the Appellate Division's conclusion-not that reasonable minds could not draw different inferences from the established facts (see e.g. People v. McRay, 51 N.Y.2d 594, 601, 435 N.Y.S.2d 679, 416 N.E.2d 1015 [1980] ).