■ KARL MYIOW, Respondent, v CITY OF NEW YORK et al., Appellants. [39 NYS3d 1]—

Order, Supreme Court, New York County (Eileen A. Rakower, J.), entered September 2, 2014, which granted plaintiff's motion for summary judgment on the issue of liability under Labor

Law § 240 (1), and order, same court and Justice, entered September 2, 2014, which, to the extent appealed from as limited by the briefs, denied defendants' cross motion for summary judgment dismissing the Labor Law § 240 (1) claim, affirmed, without costs.

On or about September 16, 2009, plaintiff, an employee of nonparty Brooklyn Welding Corp. was working at Harlem Hospital, located at 506 Lenox Avenue in Manhattan. The hospital, owned by defendant City of New York and operated by defendant New York City Health and Hospitals Corporation, was constructing a new patient pavilion. Defendant TDX Construction was the construction manager for the project. Defendant Metropolitan Steel Industries, Inc. was a prime contractor hired to fabricate and erect steel at the site. Brooklyn Welding was engaged in erecting steel at the site as part of a joint venture agreement with Metropolitan Steel.

Plaintiff was injured while in the process of preparing one of the steel beams that had been brought to the facility on a flatbed truck to be lifted off the truck by a crane and then hoisted for installation. While plaintiff was standing on the beams for the purpose of wrapping a steel rope (the "choke") around a beam for it to be hoisted, a piece of flat wooden skids (the "dunnage") separating the beams broke, causing plaintiff to fall off the truck to the ground below, sustaining injury.

Plaintiff testified that at the time of his accident, his responsibilities included preparing the steel for unloading at the site and assisting in hoisting the steel to the structure for installation. He was supervised by and reported to James Marquis and Cecil Kemp. Plaintiff had done this for over a dozen shipments of steel to the site prior to his accident.

Plaintiff testified that on the day of his accident, the load of steel that contributed to his injury arrived on site at approximately 1:30 p.m. and Marquis, his foreman, instructed him on how to unload the beams. Plaintiff and his partner, Kaniehtakeron Martin, climbed onto the flatbed to assess how best to unload the beams since they were stacked closely together. Plaintiff described the beams as resting on the dunnage which separated them. The beams were stacked in order: beam, dunnage, beam. Plaintiff testified that because the beams were packed tightly together, he told his foreman, Marquis, that he would have to "shake out" the beams to get the chokers around them so the crane could hoist them off the truck and onto the ground prior to lifting them up onto the building.

Plaintiff and Martin made a "load" of beams, working from the outside of the truck in toward the center in order to prepare the beams for lifting. They used a "spreader hook" to stack the outer beams on top of the inner beams. Plaintiff did not have any problems getting the two outer beams "synced on top" of the two inner beams. Once Martin secured the choker around four of the beams, plaintiff secured his choker around his end of the beams. At that moment, the dunnage underneath the beams broke, causing the beams and plaintiff to fall onto the ground.

Plaintiff testified that he was wearing a harness at the time of the incident, but it had not been tied off with a lanyard. Plaintiff stated that he typically wore the harness all day, but that no one told him or recommended to him that it be tied off while he was working on the flatbed truck prior to his accident.

Plaintiff moved for partial summary judgment on the issue of defendants' section 240 (1) liability, arguing that he was "clearly entitled" to summary judgment, because he fell from a height of 13 to 14 feet from the trailer while standing atop a load of stacked steel beams. Plaintiff contended that defendants had failed to provide him with proper, adequate safety protection or devices, and that this proximately caused his accident.

Defendants cross-moved for summary judgment dismissing the section 240 (1) claim. Defendants argued that plaintiff's accident did not fall under the protections of the statute because it was not an elevation-related hazard. Defendants contended that plaintiff was not using the flatbed trailer as a ladder, platform, or scaffold to work above him; he was simply unloading steel, and that is when the accident occurred. Defendants argued that New York law is clear that the unloading of a flatbed truck does not present the type of "extraordinary elevation-related hazard" contemplated by section 240 (1). Defendants further argued that plaintiff could not demonstrate that any of the safety devices enumerated in the statute would have prevented his fall.

The motion court granted plaintiff's motion for partial summary judgment on the issue of defendants' section 240 (1) liability and denied defendants' cross motion. The court observed that because plaintiff was "working at an elevation, some sort of protective device should have been used." The court also noted that the list of devices included in the statute was not exhaustive and that what was relevant was that plaintiff was "up there some 13 or 14 feet above ground on an unstable surface" which was made more "unstable because the dunnage broke," causing plaintiff to fall.

The motion court correctly determined that defendants, other than Metropolitan Steel, were liable under Labor Law § 240 (1) for plaintiff's injuries because they failed to provide plaintiff with an adequate safety device to prevent his fall from steel beams placed on a flatbed trailer. Here, as in *Naughton v City of New York* (94 AD3d 1 [1st Dept 2012]), defendants' contention that the accident is outside the scope of Labor Law § 240 (1) is without merit, because plaintiff's fall from a height of 13 or 14 feet above the ground "constitutes precisely the type of elevation-related risk envisioned by the statute" (*id.* at 8). The fact that plaintiff did not ask for a specific safety device prior to the accident is not dispositive and is not a prerequisite for recovery under Labor Law § 240 (1) (*id.*). Plaintiff has met his burden of showing that his fall resulted from the lack of a safety device and is, therefore, entitled to summary judgment on liability (*see Phillip v 525 E. 80th St. Condominium*, 93 AD3d 578, 579 [1st Dept 2012] [the plaintiff entitled to summary judgment where evidence showed that the plaintiff, who fell while unloading scaffolding material from the flatbed of a truck, was provided with a safety harness, but there was no place where the harness could be secured]).

Contrary to the dissent's view, *Berg v Albany Ladder Co., Inc.* (10 NY3d 902 [2008]) and *Toefer v Long Is. R.R.* (4 NY3d 399 [2005]) do not compel a different result in this case. In *Berg*, the plaintiff's claim was properly dismissed because there was evidence that the plaintiff's accident was caused by rolling trusses that were improperly moved by a forklift, not by the lack of a safety device, and the plaintiff failed to adduce proof sufficient to create a question of fact on this issue (10 NY3d at 904). In *Toefer*, the plaintiff's Labor Law § 240 (1) claim was based on an accident he had when he was working on a flatbed truck only four feet above the ground and was struck in the head and propelled backwards (4 NY3d at 405). Ultimately, the Court of Appeals held that the claim was not successful because it "did not present the kind of elevation-related risk that the statute contemplates" (*id.* at 408). Although " '[n]ot every worker who falls at a construction site . . . gives rise to the extraordinary protections of Labor Law § 240 (1)' " (*id.* at 407, quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]), here, it is clear that the elevation-related risks contemplated by the statute are present given the fact that plaintiff fell 13 or 14 feet to the ground and was provided with an inadequate safety harness.

The dissent points out that a plaintiff must present evidence as to which specific and identifiable safety device would have

prevented his fall, a requirement that derives from *Ortiz v Varsity Holdings, LLC* (18 NY3d 335 [2011]), where the Court stated that "to prevail on summary judgment, plaintiff must establish that there is a safety device of the kind enumerated in section 240 (1) that could have prevented his fall, because liability is contingent upon . . . the failure to use, or the inadequacy of such a device" (*id.* at 340 [internal quotation marks omitted]). Here, as in *Phillip*, which was decided by this Court after *Ortiz*, plaintiff meets this burden by showing that he was provided with a safety harness, but that it proved to be inadequate because there was no location where the harness could be secured. Concur—Tom, J.P., Saxe, Richter and Kapnick, JJ.

Tom, J.P., dissents in a memorandum as follows: Because plaintiff failed to "adduce proof sufficient to create a question of fact regarding whether his fall resulted from the lack of a safety device," or identify any safety device that could have prevented the accident, his Labor Law § 240 (1) claim should be dismissed (*Berg v Albany Ladder Co., Inc.*, 10 NY3d 902, 904 [2008]). Accordingly, I respectfully dissent.

According to plaintiff, an employee of nonparty Brooklyn Welding Corp., he was tasked with moving steel beams that had been brought to Harlem Hospital for construction of a new patient pavilion. Plaintiff was in the process of preparing one of the steel beams that had been brought to the facility on a flatbed truck to be lifted off the truck by a crane and then hoisted for installation. While plaintiff was standing on the beams for the purpose of wrapping a steel rope around a beam for it to be hoisted, a piece of flat wooden skids ("dunnage") separating the beams broke, causing plaintiff to fall off the truck to the ground below, sustaining injury.

Plaintiff had been part of a group of workers assisting in hoisting the steel to the structure. Prior to this incident, the workers had hoisted over a dozen shipments of steel to the site. On the day of the accident, after he examined the shipment, he told his foreman that the beams had been stacked too tightly together.

Plaintiff and his partner, Kaniehtakeron Martin, climbed onto the flatbed to assess how best to unload the beams. Plaintiff described the beams as resting on the dunnage which separated them. The beams were stacked in order: beam, dunnage, beam. Plaintiff testified that because the beams were packed tightly together, he would have to "shake out" the beams to get the chokers (steel rope) around them so the crane could hoist them off the truck and onto the ground prior to lifting them up onto the building.

Martin made a "load" of beams, working from the outside of the truck in toward the center in order to prepare the beams for lifting. They used a "spreader hook" to stack the outer beams on top of the inner beams. Plaintiff did not have any problems getting the two outer beams "synced on top" of the two inner beams. Martin then secured the choker around four of the beams, and plaintiff then secured his choker around his end of the beams. At that moment, the dunnage underneath the beams broke, causing the beams and plaintiff to fall onto the ground.

Plaintiff testified that he was wearing a harness at the time of the incident, but it had not been tied off with a lanyard. He stated that he typically wore the harness all day, but that no one told him or recommended to him that it be tied off while he was working on the flatbed truck prior to his accident. Nor had he ever tied himself off on any of the previous occasions when he was climbing on top of steel beams and unloading them. Martin also testified that he was provided with a safety harness but that he was not tied off with a lanyard. Martin added that the harness was of limited use as there was "nowhere to tie off [a harness] on the steel truck," and really "no way to tie off safely" at all, and that the harness was not required by OSHA rules in any event. Plaintiff echoed Martin's position when at his General Municipal Law § 50-h hearing he testified that it would have been "more dangerous" to tie off while working on the truck because then "you wouldn't be able to . . . get out of the way if something happened." At that hearing, plaintiff also testified that he was given all the safety equipment he needed or wanted.

Cecil Kemp, the head foreman for Brooklyn Welding for this project, was unaware if anyone inspected the dunnage separating the steel on arrival. He did not recall seeing any defects in the dunnage. According to Stephen Hynes, president and owner of Metropolitan Steel Industries, which was contracted to fabricate and erect steel at the site, the dunnage used to support and separate the steel beams for shipment was inspected regularly and was taken out of use if it was damaged. It was his understanding that the accident occurred when plaintiff and Martin were creating "independent piles" of steel on the flatbed rather than proceeding with the unloading process in the way the steel was loaded when it arrived at the job site.

It is well settled, to make out a prima facie case under a Labor Law § 240 (1) claim, "a worker must demonstrate the existence of an elevation-related hazard contemplated by the statute and a failure to provide the worker with an adequate

safety device" (*Berg*, 10 NY3d at 904). "[T]o prevail on summary judgment, plaintiff must establish that there is a safety device of the kind enumerated in section 240 (1) that could have prevented his fall, because 'liability is contingent upon . . . the failure to use, or the inadequacy of' such a device" (*Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 340 [2011], quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).

In *Blake v Neighborhood Hous. Servs. of N.Y. City* (1 NY3d 280 [2003]), the Court of Appeals instructed that in the absence of a statutory violation and any demonstration that the violation was a contributing cause of the fall, no prima facie violation of Labor Law § 240 (1) is made out (*id.* at 289). Stated another way, "[n]ot every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1)" (*Narducci*, 96 NY2d at 267). In the absence of a prima facie case, plaintiff is not entitled to summary judgment irrespective of the strength of defendants' opposition (CPLR 3212 [b]; *Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993]).

In *Berg v Albany Ladder Co., Inc.*, the Court of Appeals affirmed the dismissal of a section 240 (1) claim where the plaintiff was injured while working on a flatbed truck unloading steel trusses. In *Berg*, the plaintiff was standing atop several bundles of trusses about 10 feet off the ground when one of the bundles became unstable and began to roll over onto him and plaintiff climbed atop the bundle and rode it to the ground. The Court found that the section 240 (1) claim was properly dismissed because "[a]lthough plaintiff assert[ed] that the height at which he worked created an elevation-related risk . . . he failed to adduce proof sufficient to create a question of fact regarding whether his fall resulted from the lack of a safety device" (*id.* at 904). Significantly, in the order on appeal to the Court of Appeals, the Third Department had noted that the "accident was not caused by the lack of a ladder or other device necessary to get off the truck safely, but, instead, by trusses—located on the same elevation as plaintiff—rolling toward him, when apparently improperly moved by the forklift. Plaintiff acknowledged at his deposition that there was no particular safety device that would have prevented this accident and none has been identified on appeal" (*Berg*, 40 AD3d 1282, 1284 [3d Dept 2007]).

Thus, the Court dismissed the Labor Law § 240 (1) claim, finding that plaintiff has failed to identify a safety device that could have prevented the accident and his injuries.

Other Departments have applied *Berg* to situations similar to this case. For example, in *Brownell v Blue Seal Feeds, Inc.* (89 AD3d 1425 [4th Dept 2011]), the Fourth Department affirmed the dismissal of a 240 (1) claim where the plaintiff climbed onto a four-foot pile of rebar stacked on a truck in order to ascertain the best method for unloading the rebar. As the plaintiff was in the process of swinging his right leg over the top of the pile, the pile "shifted" or "snapped," striking his left foot. The momentum of the shifting rebar "threw [the plaintiff] off the truck" and onto the ground. The Fourth Department reasoned that "the fact that [the plaintiff] allegedly fell while he was 'standing on [a pile of rebar] rather than standing on the bed of the truck does not move this case from one involving the ordinary dangers of a construction site to one involving the special risks protected by Labor Law § 240 (1)' " (*id.* at 1426, quoting *Berg*, 40 AD3d at 1285). Further, the Fourth Department noted that "the rebar bundle did not fall while being hoisted or secured," and thus found that Labor Law § 240 (1) does not apply (*Brownell* at 1427 [internal quotation marks omitted]).

Supreme Court, in granting plaintiff's motion for summary judgment, observed that because plaintiff was "working at an elevation, some sort of protective device should have been used," adding "I am not familiar with all of the protective devices that may be employed." However, at his deposition plaintiff did not point to any specific safety device that could have prevented his injuries or was required for his work, and he does not do so on appeal. Nor did Supreme Court identify what device would have prevented this accident.

While the circumstances presented constitute an elevation-related risk greater than merely falling from the bed of a trailer (*see Toefer v Long Is. R.R.*, 4 NY3d 399 [2005]), record evidence is required to establish the need for a protective device, a point made plain in *Berg* as well as in *Izrailev v Ficarra Furniture of Long Is.* (70 NY2d 813, 815 [1987]), in which the trial record contained "unrebutted proof" that the plaintiff's decedent should have been provided with various items necessary to perform electrical work on a malfunctioning sign. Here, the record on this issue is bare and contains no such unrebutted evidence, prompting plaintiff's resort to the conclusory assertion that the mere fact he fell establishes his entitlement to summary judgment. Here, plaintiff's injuries were caused by a "general hazard of the workplace, not one contemplated to be subject to Labor Law § 240 (1)" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d at 269).

In short, pursuant to the Court of Appeals' holdings, for plaintiff to prevail in this matter, and to warrant denial of defendants' motion for summary judgment, plaintiff must present evidence that he should have been provided with a specific and identifiable safety device that could have prevented his injuries, and that the failure to do so was a contributing cause of the accident. Plaintiff failed to meet this burden.

The majority fails to convincingly address plaintiff's failure to identify a specific safety device or the controlling Court of Appeals' precedents requiring such a showing. Further, the majority does not even suggest any device that could have prevented the accident. As the majority recognizes, to prevail on summary judgment on a Labor Law § 240 (1) claim plaintiff must establish there is a safety device that could have prevented the accident. Contrary to the majority's claim, plaintiff did not meet this burden by merely showing that his safety harness could not be tied to the truck. The evidence was that there was no place to tie the harness safely and that it would have been more dangerous to tie off while working on the truck. Regardless, plaintiff must identify a safety device that could have prevented his fall (*Ortiz v Varsity Holdings, LLC*, 18 NY3d at 340). Here, plaintiff failed to identify such safety device and defendants' cross motion to dismiss plaintiff's Labor Law § 240 (1) claim should have been granted.

Moreover, whether a violation of section 240 (1) was a contributing cause of the accident is generally a jury question (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 524 [1985]), and "a directed verdict on the issue of liability is appropriately limited to those cases in which the only inference to be drawn from the evidence is that a failure to provide appropriate protective devices is the proximate cause of the plaintiff's injuries" (*Weber v 1111 Park Ave. Realty Corp.*, 253 AD2d 376, 377 [1st Dept 1998], citing *Zimmer* 65 NY2d at 524). Here, there is no evidence to support a finding that a failure to provide a device was a proximate cause of plaintiff's injuries. Thus, at a minimum, plaintiff is not entitled to summary judgment (*see e.g. Ortiz* at 340 [denying the plaintiff's cross motion for summary judgment on his section 240 (1) claim where there is any issue of fact as to whether there is an enumerated safety device that could have prevented his fall]).

Plaintiff relied on two cases from this Department for summary judgment on his Labor Law § 240 (1) claim. In *Naughton v City of New York* (94 AD3d 1, 8-9 [1st Dept 2012]), we awarded summary judgment as to liability to a laborer who was injured when he fell approximately 15 feet to the ground

while unloading bundles of curtain wall panels off a flatbed truck, reasoning that the failure to properly hoist a bundle of wall panels, which struck plaintiff, created Labor Law § 240 (1) liability, and also that the plaintiff, who had asked for a ladder to reach the top of bundles which were 10 to 11 feet above the flatbed surface, had "established that the absence of a ladder was a proximate cause of the accident." Similarly, in *Phillip v 525 E. 80th St. Condominium* (93 AD3d 578, 579 [1st Dept 2012]), we awarded summary judgment to a worker who sustained an injury when he fell from atop a load of nine foot high scaffolding material on a flatbed truck, finding that "a safety device enumerated in Labor Law § 240 (1) could have prevented the fall" but no such devices were provided.

Relying on *Naughton* and *Phillip*, plaintiff argues that he was "clearly entitled" to summary judgment on his Labor Law § 240 (1) claim because he fell from a height of 13 to 14 feet from a flatbed truck while standing atop a load of stacked steel beams, and adequate safety devices were not provided to him.

This Court's cited precedent cannot be reconciled with that of the Court of Appeals, which has made clear that merely because a worker falls does not mean that, under a principle of strict liability, recovery under the statute is available. Further, the two cases are clearly distinguishable from the present case on appeal. Yet, the majority does not confront or explain how our precedent fails to follow Court of Appeals precedent. Relatedly, it matters not that our decision in *Phillip* "was decided by this Court after *Ortiz*," as urged by the majority, since our decisions cannot and do not trump rulings of the Court of Appeals.

*Naughton* is readily distinguishable from this case. Indeed, in *Naughton* the plaintiff was struck by a bundle of wall panels which knocked him off the pile of bundles he was standing on and 15 feet down to the street below. Specifically, one of the tag lines on the load "got slack" causing the load to swing toward the plaintiff. Thus, the plaintiff established that the hoist proved inadequate to shield him from harm, and we found that the plaintiff was entitled to summary judgment on his section 240 (1) claim on that ground. No such concern with the hoist is raised in this case.

In addition, in *Naughton* we found that the plaintiff had established that the absence of a ladder was a proximate cause of his accident. The evidence in *Naughton* was that the plaintiff specifically asked his supervisor for a ladder but the request was denied. The plaintiff testified that when the bundle started swinging toward him, he retreated and that since there was no ladder, he had no way to get off the bundles. In this case, there

is no such testimony regarding a ladder, and plaintiff in fact testified that he was given all the safety equipment he needed or wanted. Nor as a practical matter would a ladder have helped plaintiff climb down from the bundles when the dunnage suddenly and unexpectedly broke. Accordingly, plaintiff has not established that the absence of a ladder or other device was a proximate cause of the accident.

As for *Phillip*, our holding in that matter comes in a brief memorandum decision and sheds little light on how the accident occurred. Indeed, the plaintiff in *Phillip* had no recollection of how he fell. However, in *Phillip* we held, without specificity, based on the evidence in that case, that a safety device enumerated in Labor Law § 240 (1) could have prevented the fall. In contrast, plaintiff submitted no evidence in this case that a safety device could have prevented his fall and he and Martin specifically testified that tying off to the truck would have been more dangerous because "you wouldn't be able to . . . get out of the way if something happened." Again, plaintiff also testified that he was given all the safety equipment he needed or wanted. Therefore, this case is distinguishable from *Phillip* and plaintiff cannot be said to have met his burden in this case. To the extent the majority reads *Phillip* to mean that plaintiff met his burden by merely making a showing that there was no place to secure his safety harness, such a reading does not comport with Court of Appeals precedent.

Accordingly, I would deny plaintiff's motion for partial summary judgment on the issue of defendants' Labor Law § 240 (1) liability and grant defendants' cross motion for summary judgment dismissing the claim.