(January 3, 2017)

■ David Anderson, Respondent, v MSG Holdings, L.P., et al., Appellants. [44 NYS3d 388]—

Order, Supreme Court, New York County (Kelly O'Neill Levy, J.), entered March 22, 2016, which, insofar as appealed from as limited by the briefs, denied defendants' motion for summary judgment dismissing the Labor Law § 240 (1) claim and the section 241 (6) claim insofar as it is predicated on Industrial Code (12 NYCRR) § 23-1.16 (b), and granted plaintiff's cross motion for summary judgment as to liability on these claims, unanimously affirmed, without costs.

Plaintiff, an iron worker, commenced this action alleging, among other things, violations of Labor Law §§ 240 (1) and 241 (6) to recover for injuries allegedly sustained when he fell from a concrete panel being installed as part of the stadia, or step-like surface for the seating, at Madison Square Garden. Defendant MSG Holdings, L.P., owned the premises and retained defendant Turner Construction Company to undertake a renovation of the premises pursuant to a construction management agreement. Turner subcontracted structural steel work to Helmark Steel, Inc., which sub-subcontracted the structural steel erection to plaintiff's employer, Falcon Steel Company.

Plaintiff testified at his deposition that on the day of the accident, he was working with a gang erecting precast concrete panels for the stadium seating. A crane on the arena floor lifted the panels onto a steel structure that had been installed. A steel "raker" beam ascended at an angle to form the pitch of

the stairs. Sitting atop the raker at ever higher intervals were steel plates. The crane was rigged to rings protruding from pins inserted into each concrete panel at four points, and it raised the panels onto the steel plates atop the raker. After the crane landed a panel, plaintiff's crew used pry bars to move the panel into place and bolted it to the plates.

The accident occurred as plaintiff attempted to help a coworker who was having difficulty moving a panel. Plaintiff, who was standing six inches to a foot from the edge of the panel that he was attempting to move, lost his balance and fell off the panel. He was wearing a harness but he was not tied off, because there was no place tie off. Plaintiff also stated that he was told to follow federal Occupational Safety and Health Administration's (OSHA) rules referred to as subpart R that did not require a tie-off at the elevation at which he was working.*

Rodrigo Caro, a Turner site safety manager, testified that while Falcon was to comply with subpart R in installing of steel, in installing precast concrete Falcon was to comply with subpart M, which requires protection for workers on surfaces with an unprotected edge more than six-feet high (29 CFR 1926.501 [b]).

We find that plaintiff was not provided with an appropriate tie-off notwithstanding defendants' claim that he was instructed to follow subpart M. "Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of . . . gravity to an object or person" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993] [emphasis omitted]). To prevail on a section 240 (1) claim, the plaintiff must show that the statute was violated, and that this violation was a proximate cause of his injuries (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287 [2003]).

Plaintiff established prima facie that while subjected to an elevation-related risk, he was injured due to defendants' failure to provide him with proper fall protection, namely, an appropriate place to which to attach his harness.

---

* 29 CFR part 1926, subpart R, which sets forth requirements to protect employees from hazards associated with "steel erection activities" (29 CFR 1926.750 [a]), requires fall protection for connectors and workers on a leading edge of a controlled decking zone working at a height greater than 30 feet (29 CFR 1926.760 [a] [3]). A connector is "an employee who, working with hoisting equipment, is placing and connecting structural members and/or components" (29 CFR 1926.751).

Defendants argue that plaintiff is not entitled to the protection of Labor Law § 240 (1) because he was the sole proximate cause of his injury (*see Kosavick v Tishman Constr. Corp. of N.Y.*, 50 AD3d 287 [1st Dept 2008]). They contend that plaintiff was instructed to comply with OSHA subpart M, which requires the use of a safety device for work at an elevation of six feet or higher while installing prefabricated concrete panels, and that he refused to attach the harness that was provided. However, defendants have not sufficiently refuted plaintiff's testimony that there was no place for him to tie off the harness (*Myiow v City of New York*, 143 AD3d 433, 436 [1st Dept 2016]; *Hoffman v SJP TS, LLC*, 111 AD3d 467, 467 [1st Dept 2013]; *Phillip v 525 E. 80th St. Condominium*, 93 AD3d 578, 579 [1st Dept 2012]).

The record demonstrates that the only place to tie off to was below the level of plaintiff's feet. Indeed, Caro testified that there were no guardrails or life nets where plaintiff was working and that he could not recall any independent lines above the workers installing the panels for them to tie off to. He testified that plaintiff's only option was to tie off to the inserts in the most recently placed panels behind him, below his feet. In fact, he testified that tying off to the raker beam was an option only for the installation of the first panel. After that, the anchorage points were the only tie off points. Accordingly, "[t]he tie off to the inserts was what was determined by the Falcon Management [plaintiff's employer]. That's the plan they provided. So that was what was available for the guy to tie off." He acknowledged, however, that OSHA does not recommend tying off below the feet.

Caro's testimony was supported by Brian O'Shaughnessy, another site safety manager for Falcon, who testified that tying off below the feet would be a violation of subpart M. And, although, according to O'Shaughnessy, tying-off above the head is a safer option, "[a]ny tie-off point would be better than no tie-off point." Be that as it may, refusing to tie off to an anchorage point that is inconsistent with OSHA regulations does not make plaintiff the sole proximate cause, and comparative negligence is not a defense to a Labor Law § 240 (1) claim (*see Bland v Manocherian*, 66 NY2d 452, 460 [1985]; *Hernandez v Bethel United Methodist Church of N.Y.*, 49 AD3d 251, 253 [1st Dept 2008] ["the Labor Law does not require a plaintiff to have acted in a manner that is completely free from negligence. It is absolutely clear that 'if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it' "], quoting *Blake v Neighborhood Hous. Servs.*, 1 NY3d at 290).

The fact that both Caro and O'Shaughnessy, as well as defendants' expert, later claimed in affidavits that plaintiff could have tied off to a raker beam above his head is of no moment, inasmuch as there is no evidence in the record that plaintiff was ever instructed or knew to use such points to tie off. While a passage in "Falcon's Safety and Fall Protection Plan" states that "[a]ll employees shall be provided with the necessary means to tie off at all times, including . . . anchorage points on the steel," there is no indication that this refers to the holes in the plates on the raker beam during the erection of the precast concrete panels, as opposed to other anchorage points provided during the steel erection. Moreover, even assuming the passage refers to holes in the plates on raker beams during the erection of precast concrete panels, there is no indication that it was communicated to plaintiff.

Notably, as indicated, Caro had testified that the only places for plaintiff to tie off, as determined by Falcon management, were the inserts in the precast concrete panels. Similarly, O'Shaughnessy stated in his affidavit that ironworkers were instructed to tie off to the inserts in the precast concrete panels. And, although he also stated in his affidavit that rakers beams were also available as tie-off anchor points, he never stated that plaintiff or the other iron workers were instructed that they could tie off to the raker beam.

Nevertheless, mirroring the assertion of defendants' expert, Caro would later state in an affidavit that the raker beam was also available to tie off. However, an injured worker's failure to use safety devices will not constitute the sole proximate cause of the accident unless the worker knew that he or she "was expected to use them but for no good reason chose not to do so" (*Gallagher v New York Post*, 14 NY3d 83, 88 [2010]). Regardless of whether the raker beam was an appropriate tie-off point, because defendants point to no evidence that plaintiff knew to tie off to it, his failure to do so cannot be the sole proximate cause of the accident.

Labor Law § 241 (6) imposes a nondelegable duty on owners and contractors to "provide reasonable and adequate protection and safety" to workers (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d at 501-502). Industrial Code (12 NYCRR) § 23-1.16 (b), which applies to the proper use, instruction, maintenance and measurements for safety belts, harnesses, tail lines and life lines, is sufficiently specific to sustain a claim under Labor Law § 241 (6) (*see Jerez v Tishman Constr. Corp. of N.Y.*, 118 AD3d 617, 618 [1st Dept 2014]). Specifically, 12 NYCRR 23-1.16 (b) provides: "(b) Attachment required. Every approved safety belt

or harness provided or furnished to an employee for his personal safety shall be used by such employee in the performance of his work whenever required by this Part (rule) and whenever so directed by his employer. At all times during use such approved safety belt or harness shall be properly attached either to a securely anchored tail line, directly to a securely anchored hanging lifeline or to a tail line attached to a securely anchored hanging lifeline. Such attachments shall be so arranged that if the user should fall such fall shall not exceed five feet."

While plaintiff was provided with a safety harness, he was not provided with a proper place to which to tie off his harness. Therefore, plaintiff is entitled to summary judgment as to liability on the Labor Law § 241 (6) claim predicated on a violation of 12 NYCRR 23-1.16 (b). Concur—Acosta, J.P., Renwick, Saxe, Feinman and Kahn, JJ. 