**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Stanley RIMAR, David L. Schurgin, Russell P. Barber, Defendants-Appellants.**

Nos. 76–2327, 76–2328 and 76–2329.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 8, 1977.

Decided July 27, 1977.

Rehearing Denied Oct. 27, 1977.

Rehearing and Rehearing En Banc Denied Nov. 4, 1977.

Richard M. Lustig, Lustig & Friedman, P. C., Southfield, Mich., for defendant-appellant in No. 76–2327.

Neil H. Fink, Fink & Larene, Arthur Jay Weiss, Detroit, Mich., Ralph E. Brown, Walsh, Case & Coale, Chicago, Ill., for defendant-appellant in No. 76–2328.

Robert E. Butcher, Southgate, Mich., for defendant-appellant in No. 76–2329.

Philip Van Dam, U. S. Atty., Gordon S. Gold, F. William Soisson, Detroit, Mich., for plaintiff-appellee.

Before EDWARDS and PECK, Circuit Judges, and SILER,* District Judge.

JOHN W. PECK, Circuit Judge.

These defendants appeal their convictions under a two-count indictment for stealing and aiding and abetting in the theft of goods from interstate commerce, and for possession of goods knowing them to have been stolen from interstate commerce. The trial judge first determined that *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) required the severance of certain defendants. Thereafter, at a single trial, he sat as the trier of fact as to the defendants Barber and Schurgin who had waived jury trial, and empanelled two juries to hear the cases of defendants Rimar and Chila. Defendant-appellant Rimar was jury convicted on both counts of the indictment, but was sentenced to six years on the theft count only since the judge dismissed the possession count pursuant to this court's opinion in *United States v. Solimine,* 536 F.2d 703 (6th Cir. 1976). Defendant-appellant Schurgin was found guilty by the trial judge of the possession count and

---

* Honorable Eugene E. Siler, Jr., United States District Court for the Eastern and Western Districts of Kentucky, sitting by designation.

sentenced to 18 months. Defendant-appellant Barber was found guilty of aiding and abetting in the theft and was sentenced to one year, all but 60 days suspended. Co-defendant Chila was acquitted by a jury of both counts. Co-defendant Lloyd Witherite pled guilty, received a two-year sentence under a Rule 11 plea bargain, and testified against the others at trial.

Evidence adduced at trial tended to establish the following. On April 16, 1974, Ernest Williams, a truck driver for the Shippers Dispatch Company, drove a Shippers Dispatch trailer, which originated in Chicago, Illinois, from a freight yard in Detroit, Michigan, to the Ford Assembly Plant in Dearborn, Michigan. Upon turning over the "pro bill," a document showing the contents of the trailer to be 18 pallets of 2880 air compressors, to the Ford receiving clerk, Williams was told that the compressors could not be unloaded at that time. He was asked to take the trailer and leave it in a parking area, known as the bull pen. Usual procedure at this point would be for a switcher (a driver representing an independent trucking firm and working within the Ford complex) to hook a tractor to the trailer and take it to the loading dock when Ford was ready to unload it.

Lloyd Witherite was working as a switcher at the Ford plant on April 16, 1974. He had a prior agreement with appellant Rimar, that Rimar would buy certain automobile parts that Witherite would steal. While checking through the freight bills that day, Witherite noticed the bill listing 18 pallets, 2880 air compressors. Witherite took the bill and subsequently telephoned Rimar, who agreed to buy the air compressors for the previously agreed upon price of $5.00 apiece (retail value was $26.18 each). Witherite also had an on-going agreement with appellant Barber, a security man at the plant gate, under which Barber would "look the other way" for a price. Witherite waited until Barber was on duty at the outgoing gate, then he hitched his tractor to the Shippers Dispatch trailer containing the air compressors, and drove to the outgoing gate. He warned Barber not to look too closely and Barber opened the door of the trailer slightly, then closed it quickly and allowed Witherite through. Witherite drove out of the Ford complex, parked the trailer at another Ford lot located outside the gate, and called Rimar to tell him where he could pick it up. Later that night Witherite met Rimar, who paid him $14,-400.00 in cash for the air compressors. Witherite paid Barber $200.00 on the following day for his part in the theft.

In the early morning hours of April 17, Rimar appeared at the dock of Howard Metal and Salvage, Inc., and asked Fred Howard, the owner, to assist him in unloading the contents of a trailer and reloading those contents into another trailer. John Chila, Rimar's driver, then delivered this load to the Original Equipment Manufacturers (O.E.M.), owned by appellant Schurgin. Schurgin had, a day or two before, told his warehouse manager, Larry Zbizek, to expect a large shipment of air compressors. After arrival of the parts on April 17, the compressors were unloaded and moved into the warehouse, even though no paperwork accompanied the shipment. In accordance with the instructions of Schurgin, O.E.M. employees repackaged the compressors, removing the serial plates as they did so.

On May 14, four FBI agents, acting pursuant to information given to them by Chila, proceeded to the O.E.M. Company where they identified themselves and questioned Schurgin regarding the stolen compressors. Schurgin denied they were on the premises. The agents requested permission to search; Schurgin indicated he wanted to talk to his attorney, which he did by telephone. Schurgin returned and subsequently signed the consent to search form. The search was halted at one point when Schurgin again indicated he wished to confer with his attorney, and did not resume until Schurgin's attorney arrived at the O.E.M. premises. The search produced 440 compressors and several serial plates matching those of the stolen goods. It was later determined that the remainder of the compressors had been sold by Schurgin to the Essex International Corporation, and were recovered therefrom.

Appellants present a number of issues, jointly and individually. The primary concern of this court after receiving the briefs and oral arguments of the parties, was whether the unusual procedure implemented in the district court of simultaneous prosecutions before two juries and the judge created an atmosphere so confusing as to deprive these appellants of a fair trial. A thorough review of the record has revealed certain instances of confusion, some cited by the appellants, some not. Several of such instances were reflected by misstatements of the judge or defense counsel in referring to the attorneys or their clients by the wrong names, or confusing momentarily which jury was sitting in which case. Many of these confusing moments took place out of the presence of the juries. However, nowhere in the record do we find any continuing confusion, so pervasive as to render the trial unfair. The trial judge seemed very much aware of the potential for error inherent in the procedure and he moved cautiously in areas where the rights of particular defendants were or could have been involved. Hence the trial took somewhat longer than the nature of the charges might suggest was necessary. In instances where misstatements occurred, the district judge promptly corrected himself or the attorney involved and instructed the jury accordingly. As the Supreme Court has held: " 'A defendant is entitled to a fair trial but not a perfect one.' . . . It is not unreasonable to conclude that in many cases the jury can and will follow the trial judge's instructions to disregard such [improperly submitted] information." *Bruton v. United States, supra*, 391 U.S. at 135, 88 S.Ct. at 1627.

Additionally, we conclude that the district court's instructions to the jury as to the interstate commerce element of the crimes in question correctly stated the law of this circuit as formulated in *Winer v. United States*, 228 F.2d 944 (6th Cir. 1956), and reiterated in *United States v. Yoppolo*, 435 F.2d 625 (6th Cir. 1970). We further conclude that the district court's action in dismissing the possession count as to defendant Rimar, and sentencing him solely upon the theft count, complied with this court's decision in *United States v. Solimine*, 536 F.2d 703 (6th Cir. 1976). The remaining contentions of the appellants we conclude to be without merit.

The judgments of the district court are affirmed.