**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

|  |  |  |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | ID#1511001640 |
| v. | ) | ID#1601007473 |
| | ) | |
| MICHAEL KMAN and RYAN | ) | |
| SHOVER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Submitted: December 9, 2017
Decided: March 8, 2017

On the State's Motion for Partial Severance. **GRANTED.**

On the State's Application for Dual Jury Procedure
in Joint Trial. **GRANTED.**

# MEMORANDUM OPINION

John W. Downs, Esquire and Danielle J. Brennan, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware.

Patrick J. Collins, Esquire, Collins & Associates, and Natalie S. Woloshin, Esquire, Woloshin, Lynch, and Natalie, P.A., Wilmington, Delaware, Attorneys for Defendant Michael Kman.

Peter W. Veith, Esquire, Peter W. Veith Esq., P.A., and Anthony A. Figliola, Jr., Esquire, Greto Law, Wilmington, Delaware, Attorneys for Defendant Ryan Shover.

COOCH, R.J.

## I. INTRODUCTION

Before the Court is the State's Motion to Sever the murder trials of co-defendants Michael Kman and Ryan Shover. The State moves for severance of the trials on grounds that the State expects to elicit testimony from alleged co-conspirators that Kman confessed to the charged crimes and implicated Shover. All parties and the Court agree that, under *Bruton v. United States*, the State would be constitutionally barred by the Sixth Amendment from producing such testimony in a joint trial of the two defendants.[1] The State therefore has moved to sever the trial in order to present the co-conspirators' evidence at Kman's trial.

The State also wishes to try the defendants simultaneously, but before two separate juries. Kman does not oppose the State's application. However, and although Shover agrees that a *Bruton* issue exists, he requests separate trials because of claimed prejudice resulting from his "anticipate[d]" antagonistic defenses.

Since a *Bruton* issue exists and no party objects to severance, the issue presented at this stage of the proceedings is whether a dual jury trial will result in unfair prejudice to the co-defendants should they hypothetically choose to present mutually antagonistic defenses. The Court, finding that a dual jury trial will (1) enable the State to present its desired evidence, (2) mitigate any unfair prejudice that could result from the hypothetical antagonistic defenses, and (3) substantially promote judicial economy, grants the State's Motion to Sever and thus grants the State's application to try the two defendants simultaneously before two separate juries.[2] The Court will remove, as needed, one jury from the courtroom when evidence that is inadmissible as to a particular defendant is offered, as well as undertake other measures necessary to ensure a fair trial under the unusual procedural circumstances of a dual jury trial.

---

[1] *Bruton v. United States*, 391 U.S. 123 (1968).

[2] "The use of separate juries is a *partial form of severance* to be evaluated under the standard . . . applicable to motions for separate trials." *People v. Hana*, 524 N.W.2d 682, 684 (Mich. 1994) (emphasis added); *see also* Fern L. Kletter, Annotation, *Propriety of Use of Multiple Juries at Joint Trial of Multiple Defendants in State Criminal Prosecution*, 41 A.L.R.6th 295, § 2 (2009) (describing multiple jury trials as a "partial form of severance"). Reference hereinafter to "severance" shall mean "partial severance" unless the context indicates otherwise.

## II. OVERVIEW AND PROCEDURAL HISTORY

On January 19, 2016, a grand jury indicted both defendants jointly on two counts of Murder First Degree, two counts of Possession of a Deadly Weapon During the Commission of a Felony, Conspiracy First Degree, and Insurance Fraud. The State alleges that the two defendants in this action conspired with two other co-conspirators to murder Wayne Cappelli in order to receive proceeds from Cappelli's insurance policy. The two alleged co-conspirators, Paul DiSabatino and David Hess, were charged with the same charges, but resolved their cases before they were indicted, with agreements to testify against Kman and Shover. Additionally, the State asserts that two other witnesses will testify that Shover confessed his role in the Cappelli homicide to them.

Kman and Shover are scheduled to be tried jointly beginning January 8, 2018 before one jury. The State estimates that its case-in-chief for a dual jury trial of both defendants will take approximately four weeks, exclusive of the time needed for any defense cases. The State estimates that its case-in-chief in separate trials for each defendant will last about three weeks, again exclusive of any defense case. Kman's and Shover's attorneys have each advised the Court that their defense cases will each take no more than about a week, no matter which trial format is utilized.

## III. PARTIES' CONTENTIONS[3]

### A. *The State's Contentions*

The State acknowledges that, although the defendants were charged in the same indictment, the defendants' trials must be severed due to *Bruton* issues. The State agrees that DiSabatino's and Hess' testimonies that Kman confessed to them and implicated Shover would be a violation of Shover's Sixth Amendment right to confront witnesses against him under *Bruton*, since he would potentially be unable to cross-examine Kman about his statement. Therefore, the State asserts that the two trials must be severed to prevent any infringement on Shover's constitutional rights.

---

[3] Kman advised the Court through counsel on October 13, 2016 that he agreed the trials must be severed due to *Bruton* issues, and that he had "no good faith basis" to oppose a simultaneous trial of the two defendants before two juries. Only Shover has opposed the State's Motion for Partial Severance and its application to utilize two juries.

3

The State also urges that the most efficient way to resolve the severance issues is to conduct the trials of the two defendants at the same time before the same judge, but before two separate juries. In its motion, the State asserts that "[t]he suggested procedure would have the advantage of conserving scarce judicial and attorney resources."[4] The State advises that this dual jury procedure of severance has previously been used by or approved by this Court. Additionally, in response to Shover's contention of unfair prejudice resulting from the potential presentation of mutually antagonistic defenses, the State argues that "Shover must show a 'reasonable and not hypothetical probability that substantial prejudice may result'" from the presentation of mutually antagonistic defenses.[5]

## B. *Shover's Contentions*

Shover contends that there should be two completely separate trials. Shover agrees that a *Bruton* issue exists, requiring severance. However, Shover asserts that using the method of holding the trials simultaneously before two juries is "so highly prejudicial that it will deny him a fair trial" because he and Kman "may" present antagonistic defenses. Shover argues that

> [w]hile both defendants are charged with two counts of murder out of similarly stituated facts, the defense at trial will be antagonistic. Simply put, Shover's defense anticipates arguing that Kman conspired with co-defendants DiSabatino and Hess to kill the victim, and Shover had no involvement in this scheme. Similarly, the defense submits that Kman may put forth a defense arguing the murder was committed by Shover, and the other co-defendants denying any culpability for the murder. As such, the jury would need to reject one defense in order to convict either defendant creating a strong showing of prejudice.[6]

Additionally, "Shover's defense anticipates arguing actual innocence laying criminal culpability for the murder of Cappelli at the feet of his co-defendant, Michael Kman."[7]

Shover alternatively requests that, should the Court grant the State's request to hold a single trial before two juries, the Court impose the following procedural safeguards: "A. Assignment of two bailiffs for each jury; B. Separate [c]lerks for each defendant; C. Separate court reporters for each defendant; and D.

---

[4] State's Mot. to Sever at 6.
[5] State's Reply to Shover's Resp. at 1.
[6] Shover's Resp. to the State's Motion to Sever, D.I. 23, at 3.
[7] *Id.* at 4.

Sequestration of the juries when they arrive and leave the courthouse, and during all breaks including the lunch recess."[8]

# IV. DISCUSSION

### A. *All Parties and the Court Agree That Severance of the Defendants' Trials is Appropriate in This Case*

In evaluating whether a motion for severance of co-defendants should be granted, the Court looks at four factors: "(1) problems involving a co-defendant's extra-judicial statements; (2) an absence of substantial independent competent evidence of the movant's guilt; (3) antagonistic defenses as between the co-defendant and the movant; and (4) difficulty in segregating the State's evidence as between the [defendants]."[9]  The only factors at issue are the first and the third factors.

### 1. Hess' and DiSabatino's Evidence Pose *Bruton* Issues

Kman and Shover were both charged in the same indictment pursuant to Superior Court Criminal Rule 8(b).[10]  At the scheduled joint trial of the two defendants, the State intends to adduce testimony from DiSabatino and Hess that Kman made a statement to them confessing his involvement in the charged crimes and implicating Shover.  The State and the defendants agree that, pursuant to Superior Court Criminal Rule 14,[11] the trials of Kman and Shover must be severed insofar as *Bruton* is concerned in order to permit the State to put forward its

---

[8] *Id.* at 6.

[9] *Floudiotis v. State*, 726 A.2d 1196, 1210 (Del. 1999).

[10] Superior Court Criminal Rule 8(b) provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

[11] Superior Court Criminal Rule 14 provides:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

evidence of Kman's confession and implication of Shover before Kman's jury only.

As the United States Supreme Court held in *Bruton*, an out-of-court statement of a non-testifying defendant that implicates his co-defendant cannot be admitted at a joint trial of the two defendants.[12] Reaffirming the rule announced in *Pointer v. State of Texas*, the *Bruton* court stated: "the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him' secured by the Sixth Amendment."[13] If the confessing defendant does not testify at the joint trial of the two defendants, then the co-defendant is not afforded his right to confront the confessing defendant.[14] Delaware courts have routinely considered *Bruton* issues as a factor in determining whether to sever the defendants' trials.[15]

The testimony that the State intends to elicit from DiSabatino and Hess will be a statement made to them by Kman in which he confessed to the crimes and implicated Shover. At a joint trial between the two defendants, Shover would be unable to exercise his constitutional right to cross-examine Kman regarding his statement since Kman has the constitutional right not to testify. Accordingly, as provided in *Bruton*, presentation of Kman's statement to DiSabatino and Hess in Shover's trial would violate Shover's Sixth Amendment right to confront witnesses against him.

### 2. The Claimed Antagonistic Defenses "[A]nticipate[d]" by Shover are Hypothetical and Do Not Now Warrant Severance

Whether two defendants will offer mutually antagonist defenses is a factor to consider in evaluating whether severance is appropriate. The issue posed by mutually antagonistic defenses presented to the same jury is that they may "force the jury to accept the defense of one defendant only by rejecting the defense offered by the [the] other."[16] However, the Delaware Supreme Court has held that

---

[12] *Bruton*, 391 U.S. 123.

[13] *Id.* at 126 (quoting *Pointer v. State of Texas*, 380 U.S. 400 (1965).

[14] *Id.*

[15] *Floudiotis*, 726 A.2d at 1210 (holding that the presence of a *Bruton* issue is a factor favoring severance).

[16] *State v. Robinson*, 1994 WL 684483 (Del. Super. Oct. 7, 1994). *See also Zafiro v. United States*, 506 U.S. 534, 538-39 (1993) (providing "[m]utually antagonistic defenses are not prejudicial *per se*. Moreover, [Federal Rule of Criminal Procedure] 14 does not require

a mere hypothesis that mutually antagonistic defenses will be presented is insufficient grounds for a severance. In *Stevenson v. State*, the Supreme Court affirmed the decision of this Court, stating:

> The Superior Court denied the pre-trial motion for severance of Stevenson's and Manley's trials in a carefully written opinion, which stated, in part, the following:
>
>> Here, both defendants appear to argue that mutually antagonistic defenses are present in this case because the evidence indicates that only one of them committed the lethal act. Neither defendant gave a statement to the police and neither defendant has proffered to this Court what the core of his defense is. In the final analysis, all that the defendants are offering to this Court is the hypothesis that mutually antagonistic defenses exist, without any evidence to suggest that they exist in fact. What seems apparent is the belief of each defendant that his chances for acquittal would be enhanced by severance.
>
> We . . . have reached the same conclusion. [17]

This Court also held in *State v. Gibbs* that severance was not appropriate when the party moving for severance only proposed a "hypothesis that mutually antagonistic defenses exist."[18] This Court reasoned in *Gibbs* that the "hypothesis[] that generally antagonistic defenses exist[] is not a sufficient basis for the Court to grant a severance."[19]

Here, Shover has advised through counsel that he will present a defense of "actual innocence," placing responsibility for Cappelli's murder on Kman, and set forth his apparent belief that Kman will also argue actual innocence and blame him for Cappelli's murder. However, as Kman has not proffered whether or not that will be his defense, Shover's belief is merely hypothetical at this stage. Whether,

---

severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the [trial] court's sound discretion.").

[17] *Stevenson v. State*, 709 A.2d 619, 629 (Del. 1998).

[18] 2012 WL 5989364, at *4 (Del. Super. Nov. 30, 2012),

[19] *Id.*

and to what extent, Shover will actually pursue this defense is also only hypothetical.  As *Stevenson* and *Gibbs* indicate, severance is not appropriate based merely on hypothetical antagonistic defenses.

B. *The Multiple Jury Procedure is Used by Other Jurisdictions and by Delaware Courts when Faced with* Bruton *and Antagonistic Defense Issues*

1. Other Jurisdictions Conduct a Single Trial Before Two Juries When *Bruton* Issues are Present or When the Co-Defendants Present Mutually Antagonistic Defenses

In the context of *Bruton* issues in federal cases, one authority has commented on the propriety of the dual jury practice:

> Applying this Bruton rule, trial courts have generally granted severances under [Federal Rule of Civil Procedure] 14, where confessions or other admissions can be admitted against only one defendant. A few courts, however, have experimented with other procedures in an attempt to satisfy Bruton while avoiding the time and expense of separate trials for codefendants. Among such procedures are the use of bifurcated trials, in which a verdict is returned on one defendant before the jury hears the admission of the codefendant,[2] and multiple jury trials, in which different juries return verdicts on different defendants and hear only the evidence admissible against the particular defendant whose case they are considering.[20]

In a law review note analyzing the use of dual juries, Kaitlin Canty reviewed the use of dual juries in United States federal and state courts.[21]  In her thirty-five page law review note, Canty extensively sets forth a detailed overview of state and federal courts' use of the multiple jury procedure, a thorough analysis of the costs and benefits of the procedure, and recommended guidelines for implementing the

---

[20] Annotation, *Propriety of Use of Multiple Juries at Joint Trial of Multiple Defendants in Federal Criminal Case*, 72 A.L.R. Fed. 875, § 1 (2011); *see also* Annual Review of Criminal Procedure, 41 Geo. L.J. Ann. Rev. Crim. Proc. 331-32 (2012) (providing that "[a]s an alternative to severance, some courts have utilized separate juries in trials with multiple defendants.").

[21] Kaitlin A. Canty, Note, *To Each His Own Jury: Dual Juries in Joint Trials*, 43 CONN. L. REV. 321, 324 n.14 (2010). Canty's law review article has been cited with approval by at least two well-respected secondary sources writing on the law of criminal procedure.  *See* 6 Wayne R. LaFave et al., *Criminal Procedure*, § 22.3(d) (4th ed. 2016) (describing Canty's article as "a thorough guide to evaluating the need for, selecting, and managing multiple juries for a single trial"); David P. Leonard, *The New Wigmore: Selected Rules of Limited Admissibility*, § 1.8.3 (2017).

procedure. This Court has relied (as have other authorities) on Canty's law review note for guidance this decision.

"Although used primarily in connection with the problem of codefendant statements, multiple juries have also been utilized in order to minimize prejudice at a joint trial of codefendants who assert antagonistic defenses, for purposes of judicial economy, and to spare the victim the ordeal of testifying at multiple trials."[22] In Wayne R. LaFave's treatise, *Criminal Procedure*, the practice is described as another "remed[y] for a *Bruton*-type confession."[23] That treatise cites *People v. Harris*, in which the California Supreme Court observed, "[i]n every federal and state decision called to our attention by the parties, the court has upheld against constitutional attack the dual jury procedure as used in the case before it."[24] Additionally, Canty observed that "the vast majority of [appellate] courts have upheld convictions [resulting from multiple jury trials], even while criticizing the practice."[25]

Other jurisdictions have often used two juries in the same trial to consider both defendants' antagonistic defenses. In *People v. Hana*, the Michigan Supreme Court commented on this practice:

> [t]he presence of two juries in the defendants' cases is significant. Where mutually antagonistic defenses are presented in a joint trial, there is a heightened potential that a single jury may convict one defendant, despite the absence of proof beyond a reasonable doubt, in order to rationalize the acquittal of another. *That dilemma is not presented to dual juries.* Each jury is concerned only with the culpability of one defendant; thus, they both can find the defendants innocent or guilty without the uneasiness or inconsistency that would be presented to a single jury in a joint trial. The chance for prejudice is therefore significantly lessened.[26]

Additionally, convictions rendered using the multiple jury procedure to prevent prejudice from antagonistic defenses have been expressly affirmed by appellate

---

[22] Kletter, *supra* note 2, at § 2. *See also* Annotation, *Propriety of Use of Multiple Juries at Joint Trial of Multiple Defendants in State Criminal Prosecution*, 41 A.L.R.6th 295 (2009).

[23] 5 Wayne R. LaFave et al., *Criminal Procedure*, § 17.2(b) (4th ed. 2016). Interestingly, the treatise also notes that another potential alternative to complete severance is a "bifurcated joint trial at which the confession is withheld until the jury returns a verdict as to the implicated codefendant." *Id.* No party has suggested this procedure in this case, and this Court declines to entertain this possible option.

[24] *People v. Harris*, 767 P.2d 619, 634 (Cal. 1989).

[25] Canty, *supra* note 21, at 324 n.14.

[26] 524 N.W.2d 682, 696 (Mich. 1994) (emphasis added).

courts in New Jersey,[27] Illinois,[28] Nevada,[29] and many federal Courts of Appeal[30] for reasons similar to those articulated by the Michigan Supreme Court.

However, the general practice of holding dual jury trials has not been endorsed by all jurisdictions. In *People v. Ricardo B.*, the New York Court of Appeals advised its lower courts that the use of multiple juries is

---

[27] *State v. Hunt*, 558 A.2d 1259, 1293 (N.J. 1989) (discussing the use of dual jury trials to "minimize prejudice at a joint trial of codefendants who assert antagonistic or inconsistent defenses.").

[28] *People v. Johnson*, 594 N.E.2d 253, 260 (Ill. 1992) (condoning the use of a multiple jury procedure in a trial of two defendants whose defenses were mutually antagonistic).

[29] *Ewish v. State*, 871 P.2d 306, 308 (Nev. 1994) (holding that "[t]he District [C]ourt refused to try the three defendants separately, wanting to retain the administrative advantages of a joint trial. Yet, to protect against the somewhat antagonistic trial defenses of the defendants, the court opted to utilize a multiple jury system. In accordance therewith, three juries were empaneled and assigned to an individual defendant. Common evidence was presented to all three juries. Yet when the court felt that justice or procedure required it, the juries were separated and individually considered evidence particular to their defendant's trial."). However, although the Nevada Supreme Court upheld the convictions obtained as a result of the multiple jury procedure, the Court advised that its opinion "is not an endorsement of the multiple jury device. If not implemented carefully or in the proper circumstances, using multiple juries to administer criminal trials becomes a breeding ground for curious results, tainted justice, and issues for appeal." *Id.* at 316. However, the Nevada Supreme Court instructed trial courts to refrain from using the procedure until "guidelines authorized by [the Nevada Supreme Court] or sanction from [the Nevada state] legislature" were provided; since 1994, no law or guideline has apparently been put in place that has authorized the use of dual jury trials in Nevada. *See McKnight v. State*, 2015 WL 9464449, at *2 (Nev. Dec. 18, 2015) (stating that a multiple jury procedure "is not authorized by Nevada law." (citing *Ewish*, 871 P.2d at 314)). This Court nevertheless finds the *Ewish* analysis of whether a dual jury trial would mitigate unfair prejudice from mutually antagonistic defenses helpful, since the dual jury procedure was disallowed for procedural reasons (i.e., lack of guidelines) rather than a finding of unfair prejudice resulting from the procedure.

[30] *See* Canty, *supra* note 21, at 324 n.14. In her law review note, Canty states that the "First, Sixth, Seventh, [Ninth,] Tenth, and D.C. Circuits['] [Courts of Appeal] have also affirmed convictions of defendants tried by the use of multiple juries." *Id.* (citing *United States v. Sidman*, 470 F.2d 1158, 1168 (9th Cir. 1972); *Wilson v. Sirmons*, 536 F.3d 1064, 1100 (10th Cir. 2008); *Brown v. Sirmons*, 515 F.3d 1072, 1077-79 (10th Cir. 2008); *Padilla v. Dorsey*, 2000 WL 1089502, at *1 (10th Cir. Aug. 4, 2000); *Mack v. Peters*, 80 F.3d 230, 235, 238 (7th Cir. 1996); *United States v. Lebron-Gonzalez*, 816 F.2d 823, 830-31 (1st Cir. 1987); *United States v. Lewis*, 716 F.2d 16, 18-21 (D.C. Cir. 1983); *United States v. Hayes*, 676 F.2d 1359, 1366-67 (11th Cir. 1982); *United States v. Rimar*, 558 F.2d 1271, 1273 (6th Cir. 1977); *United States v. Rowan*, 518 F.2d 685, 689-90 (6th Cir. 1975)).

> the exception, not the rule. . . . The first order of business of the criminal courts . . . is justice, not economy or convenience and the use of multiple juries can only magnify the problems inherent in joint trials because of the need to insulate the juries from inadmissible evidence or argument.[31]

Although the New York Court of Appeals issued this warning to the lower New York courts, it did recognize that "multiple juries have obvious attractions, particularly in cases involving *Bruton* problems or antagonistic defenses."[32]

Additionally, in 1981, a Maryland intermediate court "strongly condemn[ed]" the use of multiple jury procedures in *Scarborough v. State*, citing cases from the Sixth and Ninth Circuits, and from Louisiana and Michigan to support its "condemn[ation]" of the practice.[33] However, those jurisdictions have since 1981 affirmed convictions of defendants using the multiple jury procedure.[34]

### 2. Delaware Courts have Previously Considered and Ordered a Single Trial Before Two Juries

In Delaware, Superior Court Rule of Criminal Procedure 14 in part authorizes the Court to "provide whatever . . . relief justice requires" when considering whether to sever co-defendants' joint trials. The State's requested method of holding a single trial of both defendants before two separate juries has been considered and used by Delaware courts in the past as a form of "relief" from unfair prejudice resulting from joinder of the defendants' trials.

---

[31] 535 N.E.2d 1336, 1339 (N.Y. 1989).

[32] *Id.* (internal citations omitted). *But see People v. Garcia*, 754 N.Y.S. 2d 138, 141 (Sup. Ct. 2002) (a New York trial court's opinion providing that "[a] 'multiple jury' trial may be more advisable in a case where the evidentiary phase will be short, where accordingly the need for an extended number of alternates is less, where the defendants are not personally antagonistic to each other and the defense of each is not antagonist to the other, and the courthouse is structured to handle the not insignificant logistics of a 'multiple jury' trial."). This dicta in *Garcia* appears somewhat at variance from the Court of Appeals' suggestion that multiple jury trials are attractive in cases with *Bruton* problems or antagonistic defenses.

[33] 437 A.2d 672, 676 (Md. Ct. Spec. App. 1981) (but finding no reversible error despite its condemnation of the practice).

[34] *See, e.g.*, *United States v. Rimar*, 558 F.2d 1271, 1273 (6th Cir. 1977); *Lambright v. Stewart*, 191 F.3d 1181, 1186 (9th Cir. 1999) (holding that the use of a dual jury procedure did not violate the defendants' due process rights in a capital murder trial); *State v. McNeil*, 753 So.2d 938, 946 (La. 2000); *People v. Hana*, 524 N.W.2d 682, 696 (Mich. 1994).

The Delaware Supreme Court has suggested that a single trial before two juries would resolve issues regarding the admission of evidence against one defendant that would be inadmissible against the other. Thus, in *Barrow v. State*, the defendants had been charged with, *inter alia*, Murder First Degree.[35] Commenting on the possibility of using a dual jury procedure to avoid *Bruton* issues, the Delaware Supreme Court stated "[a]nother alternative [to complete severance] might be the use of two separate juries who would hear all the common, while only one jury would hear the mitigation evidence offered by Barnett that might implicate Barrow."[36]

Additionally, in *Collins v. State*, an Assault First Degree case, the Delaware Supreme Court implicitly acknowledged the existence of this procedure in Delaware, but did not comment on the trial court's use of it.[37] In *State v. Anderson et al.*, this Court was faced with a similar *Bruton* issue and empaneled two juries. Using this method of partial severance, the State was permitted to introduce one defendant's statement before that defendant's jury, and outside the presence of the other jury. However, in contrast to this case, the defendants in *Anderson* did not present antagonistic defenses.

This procedure has been approved in Delaware at least as early as the 1994 Sussex County dual jury trial of *State v. Collins and Washington* involving Robbery First Degree and related crimes,[38] and as recently as last summer, when the Superior Court in New Castle County approved the use of a dual jury procedure in an upcoming two-defendant Murder First Degree trial.[39]

Moreover, Delaware courts have at least contemplated the use of two juries in a single trial. In *State v. Robinson*, a Murder First Degree case involving two jointly indicted defendants, this Court found that severance was appropriate because of the prejudicial effect that the defendants' mutually antagonistic defenses would have on the defendants' joint trial.[40] However, the Court requested

---

[35] 749 A.2d 1230, 1233 (Del. 2000).

[36] *Id.* at 1249.

[37] 1995 WL 120655 (Del. Mar. 10, 1995) (finding no merit to an appeal from the trial court's denial of Appellant's Motion for Postconviction Relief on grounds unrelated to the trial court's use of two juries in a single trial).

[38] *State v. Collins*, Crim. ID No. 9312005134, D.I. No. 17 (Del. Super. Mar. 15, 1994).

[39] *State v. Brown*, Crim. ID No. 1108002188, D.I. No. 109 (Del. Super. Aug. 18, 2016) (providing, "As we have discussed on multiple occasions, there will be two separate juries.").

[40] 1994 WL 684483, at *1 (Del. Super. Oct. 7, 1994).

that counsel consider the possibility of proceeding with a single trial before two juries:

> The mutually antagonistic defenses on the particular facts before this court weigh in favor of a Rule 14 severance. Such a severance will ensure that justice is done with respect to these defendants. However, it does not necessarily follow that separate juries must be empaneled on different occasions. The Court will hear the parties' positions at the pretrial conference . . . regarding a single trial before two juries.[41]

The Court ultimately declined to hold a single trial before two juries, concluding that "[a]lthough this procedure has been recognized in other jurisdictions . . . and used in Delaware, more preparation time is necessary than the hours which remain before the scheduled trial [date] of October 24, [1994]."[42]

As demonstrated above, the Delaware Supreme Court and the Superior Court have approved explicitly or implicitly the use of a dual jury trial.

### C. *A Dual Jury Trial Is the Appropriate Way to Resolve the Issues Arising Under* Bruton *and Possible Antagonistic Defenses In This Case*

This Court finds that a two-jury trial is the appropriate maneuver to resolve the *Bruton* issue and to prevent any unfair prejudice from potentially antagonistic defenses. The dual jury procedure has previously been used by this Court and has been suggested as appropriate by the Delaware Supreme Court. Moreover, convictions rendered through the use of the dual jury procedure have been affirmed in many jurisdictions, including situations when appellate courts have nevertheless admonished trial courts for using the practice.

This Court heeds the warning of other jurisdictions that have condemned the practice, but believes that the careful use of a dual jury trial in this case will afford the defendants a fair trial and will promote substantial judicial economy. Additionally, numerous witnesses will then have to testify at only one trial.

With respect to the *Bruton* issues, the two juries will hear all evidence common to the two defendants. As stated by Canty in her law review note, "the benefits of dual juries are only realized if there is substantial overlap between the

---

[41] *Id.*

[42] *State v. Robinson*, Crim. ID No. 9310011127, D.I. No. 54 (Del. Super. Oct. 21, 1994).

evidence against all defendants."[43]  Here, the Court understands that in this dual jury trial there will be "substantial overlap between the evidence against [both] defendants."  However, when the State wishes to offer testimony from DiSabatino and Hess about Kman's statement, the Shover jury will be taken out of the courtroom.  Therefore, Shover's constitutional rights will not be violated by the admission of Kman's statement to DiSabatino and Hess to Kman's jury only.

This procedure will also mitigate the effect of any prejudice resulting from possible antagonistic defenses offered by the two defendants.  As the Michigan Supreme Court reasoned in *Hana*, "[e]ach jury is concerned only with the culpability of one defendant; thus, they both can find the defendants innocent or guilty without the uneasiness or inconsistency that would be presented to a single jury in a joint trial.  The chance for prejudice [that accompanies antagonistic defenses in a joint trial] is therefore significantly lessened."[44]  Also, and on an issue-by-issue basis, upon application of a party and at the discretion of the Court during the trial, one jury may be removed before one defendant presents evidence that may be unfairly prejudicial to the co-defendant's case.

The Court also recognizes the complications that can arise in dual jury trials.  For example, in *State v. Anderson*, a previously mentioned case that utilized a dual jury trial, one defendant's jury during deliberations inadvertently was provided photographic evidence admitted only against the other co-defendant.  The defendant moved for a new trial, which this Court granted.[45]  Mindful of the many pitfalls that may arise from the use of a dual jury procedure, the Court believes that the integrity of the defendants' trials will be preserved since proper procedural safeguards will be implemented.

However, this decision is not a blanket endorsement of the multiple jury procedure, which should be used only under appropriate circumstances.  As other courts and authorities have advised, this procedure should only be used where there is a substantial amount of evidence common to both defendants, where the procedure will not prejudice the defendants' rights to fair trials, and where guidelines are put in place to protect the integrity of the trial.  Notably, in other jurisdictions that have "condemned" the dual jury procedure, those jurisdictions

---

[43] Canty, *supra* note 21, at 355.

[44] 524 N.W.2d at 696.

[45] *State v. Anderson*, Crim. ID No. 0804031734, at *3 (Del. Super. Dec. 3, 2009) (ORDER).

have generally prohibited the procedure for want of procedural guidelines that could be followed by trial courts to ensure the integrity of the proceedings.[46]

In this case, as many of the witnesses that would testify at separate trials of Kman and Shover would be the same, it is logical to have them to testify at only one joint trial with two juries. The only issue that would possibly warrant complete severance, the *Bruton* issue, is dispatched of by use of a dual jury procedure. Otherwise, the evidence presented at separate trials of the defendants will largely overlap. As previously stated, the procedure will mitigate any unfair prejudice that could be posed by any antagonistic defenses at trial. Additionally, considerable judicial economy will be achieved by implementing the dual jury procedure in this case. Accordingly, as proper guidelines will be followed to ensure the defendants a fair trial, the use of a dual jury trial in this case is appropriate.

## D. *Procedural Safeguards Will be Put in Place During the Trial*

Well prior to the trial, the Court, in consultation with counsel and court staff, will develop a protocol to govern trial procedures particular to a dual jury case. The Court finds the following "model guidelines" from Canty's law review note helpful in suggesting prophylactic procedures to be followed.[47] They are worth restating *in toto*, and shall serve as a guide, with such modifications as are appropriate, to the dual jury procedures to be used in this case:

---

[46] *See Woolbright v. State*, 160 S.W.3d 315 (Ark. 2004) (finding no reversible error, but "prohibit[ing] the use of dual juries until such time as a rule has been implemented to specifically address the practical considerations necessary for safeguarding the defendants' rights."); *Ricardo B.*, 535 N.E.2d at 1339 (affirming the multiple jury procedure used in the trial court, but providing that "[m]ultiple juries are to be used sparingly and then only after a full consideration of the impact the procedure will have on the defendants' due process rights and after thorough precautions have been taken to protect those rights."); *Ewish*, 871 P.2d at 316 (providing that trial courts should refrain from using the multiple jury procedure "[w]ithout guidelines authorized by this court or sanction from [the Nevada] state legislature."). *Cf. Wilson v. State*, 983 P.2d 448, 456 (Okla. Crim. App. 1998) (holding that a dual jury procedure was proper because the Court had previously set forth a brief guideline governing the dual jury procedure. The Oklahoma Court of Criminal Appeals noted that "[t]he procedure 'requires great diligence on the part of the trial judge and cooperation of the attorneys to take the precautions necessary to ensure due process throughout the joint trial.'" ).
[47] Canty, *supra* note 21.

## A. Guidelines for Impaneling Multiple Juries in Joint Trials

. . .

### 1. Voir Dire

There should be a separate and perhaps mutually exclusive voir dire for each jury. The defendant and the defendant's counsel should be present throughout the selection of his jury. Any codefendants should only be present briefly to ensure that no jurors on any jury know the defendants. Any jurors who are selected to serve on the first jury should be excused while selection of the remaining juries is completed. During the voir dire, the judge should explain that there will be more than one defendant on trial but that each jury will be responsible for the determination of the guilt or innocence of only one defendant. The jury is not to consider or speculate on the guilt or innocence of any other defendant. During the trial, each jury may be excused and should not speculate about the reasons for removal. The judge should ask each prospective juror whether there is anything about this procedure that would hinder his or her ability to follow the judge's instructions.

Separation of the venires is particularly important when defendants are presenting antagonistic defenses. Great care must be taken to avoid exposing one defendant's jury to the antagonistic defense of another codefendant.

### 2. Explanation to the Jury

Each jury should receive separate explanations as to the procedure prior to the start of the trial. Each should be informed whose guilt or innocence it is charged with determining. The juries should be told that they will not be present at all times in the courtroom but that they are not to speculate as to why they are excused or about evidence presented while they are gone. They should also be told to carefully adhere to any instruction that the judge provides and not to draw any inferences from the fact that the defendants are seated at one table. The judge should also explain to them why the court is conducting the procedure, particularly that it will save the court time and money.

### 3. Opening [Statements] and Closing [Arguments]

Each jury should be given separate opening statements. Closing [arguments] may be separate or together depending on whether or not counsel plans to reference evidence inadmissible against one defendant. No references to other defendants should be made. Counsel and the judge must ensure that counsel does not mention evidence

16

inadmissible to the defendant or that was not presented to that defendant's jury.

## 4. Exhibits

Each jury should receive a copy of the exhibits admissible against their defendant. This will decrease the chances that one jury will speculate about the deliberations of the other. Any exhibits that are not capable of duplication should be distributed between the juries per request and discretion of the trial judge.

## 5. Presentation of Evidence

A jury should only be present in the courtroom if the evidence presented is admissible against its defendant. As a result, the trial court and counsel must do their best to predict when inadmissible evidence will be presented against one defendant in order to excuse that defendant's jury prior to the admission of this evidence. The ideal procedure is for the judge to review with counsel which jury-or juries-to bring back to the courtroom prior to calling the next witness. Although this is an extra burden on defense counsel and the trial court judge, if each is vigilant and takes extra care to anticipate lines of questioning, each jury should only hear the evidence that it is permitted to hear. If inadmissible evidence is presented by accident in front of a defendant's jury, the trial judge must determine whether the error is capable of being corrected through instruction, and, if appropriate, provide the jury with a proper limiting instruction. Ultimately, the discretion rests with the trial judge. The goal is to ensure that the evidence against one defendant is the same in the joint trial as if he or she would have had a trial alone.

## 6. Direct Examination and Cross-Examination

Normal direct examination should occur unless evidence requires otherwise. The trial judge has the discretion to hold direct examination separately for each defendant or to allow all juries to be present. Of course, a jury must be excused if any evidence inadmissible against its defendant is about to be presented. The court and attorneys should also be aware of antagonistic defenses. During cross-examination, only the jury of the defendant whose case it pertains to, whether just one defendant or all defendants, should be present.

## 7. Errors

If any error occurs during the proceedings, the judge must use his or her discretion to determine whether such error may be corrected with proper limiting instruction or if a mistrial is necessary. Examples of such errors

include bringing the wrong jury back into the courtroom; counsel, the trial court judge, or a witness calling the defendant by a codefendant's name; or presentation of evidence in front of a defendant's jury that is inadmissible against that defendant.

## 8. Repeated Admonishments

It is essential that the trial judge repeat the instructions to the jury of its role in the proceeding. The judge must continually remind the jury that it must only consider the guilt or innocence of its defendant; that even though all defendants will be in the courtroom, the jury may draw no inference regarding an association between them; and that no speculation must be made regarding the reasons for removal or any other aspect of the procedure. It is hard to imagine that such instructions could ever be excessively repeated.

## 9. Court Reporter

The court reporter should, to the extent possible, keep separate records of the proceedings and must note which jury or juries are present.

## 10. Jury Instructions

It is within the trial judge's discretion to hold joint jury instructions, in whole or in part, if he or she determines it will comport with defendants' rights. Defendants should not be referred to together in the jury instructions, either by the use of "and/or" or other words or phrases that would link them together. Jurors should be informed that they should consider all evidence as a whole but must remember what evidence is applicable to their defendant. The juries should again be reminded not to speculate about reasons for their removal from the courtroom and that they are required adhere to all instructions given throughout the trial.

## 11. Jury [Separation from the Other Jury]

All juries should be [separated in the courthouse] from one another, with separate jury rooms and separate restrooms designated for each jury. Lunch should be at different times. Jurors should be instructed not to contact any jurors from other juries even in passing. Each jury should also be labeled to reduce the likelihood of confusing them. They may wear labeled or colored badges. A single court officer should be assigned to each jury and should stay with the jury whenever the judge or counsel is absent from the courtroom.

18

[The Court will take steps] to prevent exposure to media coverage about evidence against codefendants. This is particularly important in highly publicized cases.

## 12. Courtroom Layout and Jury Accommodations

Accommodating multiple juries in one courtroom can often be challenging. Ideally, each jury would have its own jury box, but courtroom facilities do not always allow for this opportunity. The goal should be to ensure that each jury has as adequate a view of the witnesses and defendants as the other jury or juries. If two jury boxes are unavailable, other feasible options include: (1) one jury seated in the jury box and the other seated in chairs in front of or perpendicular to the jury box or (2) one jury seated in the jury box and one jury in seats otherwise used by the audience. If the latter option is selected, the court must ensure that the jury in public seating does not occupy excessive space such that the defendant's right to a public trial is infringed. The juries should switch places every other day or at an interval that the trial judge determines is appropriate.

## 13. Verdict

Each jury renders its own verdict and verdicts should be sealed until all are reached. This is particularly important in highly publicized cases. The jury rendering a verdict first may be sequestered until the remaining verdict(s) are reached. Alternatively, they may be excused and advised that they may not reveal anything about the verdict until such time that the court contacts them rescinding the order. [48]

. . .

In her concluding remarks, Canty well summarizes the advantages of a dual jury trial:

> The trial judge is the most important aspect to impaneling a dual jury. It is within the judge's power and responsibility to properly advise the jury of its role so that the defendants are not prejudiced by the procedure. The judge, as well as counsel, must be vigilant throughout the trial in order to guard against any potentially prejudicial evidence. These burdens increase as the amount of independent evidence against each defendant increases. Accordingly, the benefits of dual juries are only realized if there is substantial overlap between the evidence against all defendants. [49]

---

[48] *See* Canty, *supra* note 21, at 350-55.
[49] *See* Canty, *supra* note 21, at 355.

## V. CONCLUSION

Therefore, the State's Motion for Partial Severance and the State's application for a multiple jury trial are **GRANTED.**[50]

/s/ *Richard R. Cooch*

Richard R. Cooch, R.J.

cc:     Prothonotary

---

[50] This decision approving a dual jury trial has been necessarily issued at this time, which is ten months before the scheduled start of trial. The Court recognizes nevertheless that circumstances presently unknown to the Court and counsel may subsequently arise. Accordingly, in the event unforeseen circumstances affect the propriety of a dual jury trial, the Court may adjust the format of these proceedings as may become necessary.